OPINION
{¶ 1} Plaintiffs-appellants, Sharon Wilborn, et al., appeal the decision of the Mahoning County Common Pleas Court dismissing their claims against defendants-appellees, Bank One Corporation, et al.
 {¶ 2} Each of the appellants is a borrower who entered into a mortgage agreement with one of the appellee banks. Appellants include: Sharon L. Wilborn; Shirley Wright; Todd and Traci Campbell; Delores Huff, William and Julie Wymer; Darin and Amy Beth Distel; Bruce D. Beers; and Marianne A. van Gulijk. Appellees include Bank One, N.A. (Ohio) (Bank One) (incorrectly named as Bank One Corp.); Ameriquest Mortgage Company (Ameriquest); Principal Residential Mortgage, Inc. (Principal); Wells Fargo Home Mortgage, Inc. f/k/a Norwest Mortgage, Inc. (Wells Fargo); Washtenaw Mortgage Company (Washtenaw); Mortgage Electronic Registration Systems, Inc. (MERS); Chase Manhattan Mortgage Corporation (CMMC); Washington Mutual Bank, FA, successor in interest to Homeside Lending, Inc. f/k/a BancBoston Mortgage Corporation (Homeside); and the law firm Lerner Sampson and Rothfuss (Lerner Sampson)[1].
 {¶ 3} The mortgage agreements contained a reinstatement provision which allowed the borrower to settle a payment dispute, discontinue foreclosure litigation, and reinstate the mortgage loan. The provision also allowed for the lender to recover reasonable attorney fees incurred due to the borrower's default.
 {¶ 4} It is undisputed that each of the appellants defaulted on their loans and the respective appellee bank instituted foreclosure proceedings. After the foreclosure proceedings were commenced and before a sheriffs sale of their property, appellants utilized the reinstatement provision of the mortgage agreement. They paid the appellee banks the amount they were in default in addition to costs, including some attorney fees. A typical example of a reinstatement provision reads as follows:
 {¶ 5} "19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18."
 {¶ 6} On August 6, 2003, appellants filed this class action lawsuit. They asserted three claims for: (1) violation of public policy and the common law of Ohio; (2) unjust enrichment; and (3) civil conspiracy. Appellants contended that appellees violated Ohio common law and public policy when they assessed and received attorney fess in connection with the mortgage loan agreements.
 {¶ 7} Appellees filed Civ.R. 12(B)(6) motions to dismiss appellants' complaint for failure to state a claim upon which relief could be granted. On July 21, 2005, the trial court granted appellees' respective motions. The court concluded that Ohio common law did not prevent the parties from agreeing to pay reasonable attorney fees in connection with a mortgage reinstatement provision or alternate workout agreement. Relying on Washington Mut. Bank v. Mahaffey, 154 Ohio App.3d 44,2003-Ohio-4422, 796 N.E.2d 39, and Davidson v. Weltman, Weinberg Reis (S.D.Ohio 2003), 285 F. Supp.2d 1093, the trial court reasoned that the "payment of attorney's fees in the context of a reinstatement of a mortgage is not synonymous with the payment of attorney's fees in the context of default on a note or mortgage."
 {¶ 8} This appeal followed. In addition to the appellate briefs filed by appellants and appellees, amicus curiae Ohio Mortgage Association and Federal Home Loan Mortgage Corporation have filed a joint appellate brief in support of appellees' position.
 {¶ 9} Appellants' sole assignment of error states:
 {¶ 10} "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS-APPELLANTS IN GRANTING DEFENDANTS-APPELLEES' MOTION TO DISMISS." STANDARD OF REVIEW
 {¶ 11} The standard of review for a Civ.R. 12(B)(6) motion to dismiss requires the appellate court to independently review the complaint to determine if the dismissal was appropriate. Ferreri v. The Plain DealerPublishing Co. (2001), 142 Ohio App.3d 629, 639, 756 N.E.2d 712. Additionally, since this case presents the Court with only a question of law, we apply a de novo standard of review. Goodyear Tire Rubber Co.v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512, 2002-Ohio-2842,769 N.E.2d 835, at ¶ 4.
 {¶ 12} A motion to dismiss for failure to state a claim upon which relief can be granted is a procedural motion that tests the sufficiency of the complaint. State ex rel. Hanson v. Guernsey Cty. Bd. ofCommrs. (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378. In order to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must find beyond doubt that appellant can prove no set of facts warranting relief after it presumes all factual allegations in the complaint are true, and construes all reasonable inferences in appellant's favor. State ex rel. Seikbert v. Wilkinson (1994),69 Ohio St.3d 489, 490, 633 N.E.2d 1128. OHIO COMMON LAW
 {¶ 13} Appellants argue that attorney fee provisions included in a contract in indebtedness are unenforceable as against public policy. Appellants rely on various case law and Ohio Revised Code provisions. Appellees argue that the attorney fee provisions contained in the reinstatement provisions or alternate workout agreements in the mortgage contracts are consistent with Ohio common law and public policy.
 {¶ 14} In 1893, the Ohio Supreme Court found that a stipulation in a mortgage contract providing for the payment of reasonable attorney fees in a foreclosure action was void as against public policy. Leavens v.Ohio Natl. Bank (1893), 50 Ohio St. 591, 34 N.E. 1089. In Miller v.Kyle (1911), 85 Ohio St. 186, 97 N.E. 372, syllabus, the Court held that "[i]t is the settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void."
 {¶ 15} While the Ohio Supreme Court's pronouncements in this regard may have seemed to be "settled law," new situations presented themselves years later that tested that rule. In Worth v. Aetna Cas. Sur.Co. (1987), 32 Ohio St.3d 238, 513 N.E.2d 253, syllabus, the Court held that "[a]n indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable and is not contrary to Ohio's public policy." The Court distinguished indemnity agreements from a debt instrument observing:
 {¶ 16} "When a stipulation to pay attorney fees is incorporated into an ordinary contract, lease, note or other debt instrument, it is ordinarily included by the creditor or a similar party to whom the debt is owed and is in the sole interest of such party. In the event of a breach or other default on the underlying obligation, the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation. In those circumstances, the promise to pay counsel fees is not arrived at through free and understanding negotiation.
 {¶ 17} "In contrast, the indemnity agreements at issue in the instant case present a circumstance in which it is in the interest of both the executives and the employer for the executives to enforce the terms of their Employment Agreements. It was in the executives' interest to have the means to enforce their employment contracts. It was in Union Commerce's interest to retain qualified personnel during and following a change of control and to provide its executives with security by giving them the means to vindicate their rights under the contracts. Through free and understanding negotiation, both the executives and the employer were able to protect their respective interests. The fact that this indemnity agreement was assented to in this context distinguishes this case from the ordinary stipulation to pay attorney fees for breach of a debt obligation. This is not a situation of a one-sided attorney fees provision or one of imbalance, but one of making the indemnified parties whole. Consequently, our decision today leaves undisturbed our holding in Miller v. Kyle, supra, and like cases." Id. 242-243, 513 N.E.2d 253.
 {¶ 18} Just six weeks later, the Court decided Nottingdale Homeowners'Assn. v. Darby (1987), 33 Ohio St.3d 32, 514 N.E.2d 702. InNottingdale, the Court held that a provision in a declaration of condominium ownership or condominium by-laws requiring the payment of attorney fees incurred by a condominium owner's association in either a collection or foreclosure action for unpaid assessments is enforceable. Defendants-appellees, Keith and Ollie Darby (the Darbys), bought a Nottingdale Condominium. After several years of paying their monthly assessments, the Darbys intentionally stopped paying them. They contended that the plaintiff-appellant's, Nottingdale Homeowners Association, Inc., board of trustees was illegally elected by less than a quorum of unit owners as was required by the condominium by-laws, and, additionally, because they felt that the persons who assumed the trustees' responsibilities invalidly increased the monthly assessments above those amounts permitted by the condominium declaration. Since the Darbys failed to pay the assessments, the homeowners association filed a lien against the property and subsequently filed a foreclosure action.
 {¶ 19} The homeowner's association sought approximately $2,500 in unpaid monthly assessments and attorney fees of over $12,000. The association sought attorney fees based upon certain provisions within the declaration of condominium ownership and condominium by-laws. The trial court found the lien to be valid and also awarded attorney fees. The appeals court overturned the award of attorney fees on the basis that attorney fees in Ohio are recoverable only where statutorily mandated or where the opponent acts in bad faith.
 {¶ 20} The Ohio Supreme Court reversed the appellate court finding that, in this situation, attorney fees were recoverable. The Court reasoned:
 {¶ 21} "By refusing to enforce the provision which would require appellees to pay appellant's reasonable attorney fees, this court would make it virtually impossible for condominium unit owners' associations to recoup unpaid assessments from recalcitrant unit owners. The expense of collection would render the effort useless. The result would be that a unit owner, who for any reason does not wish to pay his monthly service assessment, can enjoy the benefits of such services and refuse to pay for them, secure in the knowledge that collection by the association will be prohibitively expensive. Under such circumstances, what incentive would exist for the unscrupulous unit owner to pay his assessments? Obviously, very little.
 {¶ 22} "As can be seen, the fee-shifting agreement in this case protects the fund of the unit owners' association from potential bankruptcy, and the conscientious contributors thereto from the burden of paying for the delinquency of others. Without such fee-shifting agreements, unit owners' associations may have to abandon claims against debtors, such as appellees, as too costly to pursue. With such agreements, the debtor will be encouraged to pay to avoid litigation, and if litigation becomes necessary, the association's resources will be protected if its suit proves meritorious. A more ideal arrangement can scarcely be imagined." Nottingdale, 33 Ohio St.3d at 36-37,514 N.E.2d 702.
 {¶ 23} Appellants maintain that in their case, the concerns that were present in Nottingdale do not exist here such that another exception is necessary. Appellants assert that if the attorney fees were not paid by a borrower, the bank would not be forced to forego enforcement of the mortgage contract. Additionally, appellants argue, unlike condominium associations, banks can and do manage the risk of default. According to appellants, banks accomplish this by assessing the particular risk associated with each loan at the time of inception, and adjust the interest rate associated with the loan to correspond with that risk.
 {¶ 24} Appellants have cited an Ohio appellate court case that has refused to enforce an attorney fee provision in a note or mortgage. That case noted that Miller held that such an attorney fee provision was void as against public policy. See Sabin v. Ansorge (Dec. 1, 2000), 11th Dist. No. 99-L-158 (provision requiring debtor to pay attorney fees incurred in enforcing the note was unenforceable). Additionally, appellants cite some federal bankruptcy court cases that have denied claims for attorney's fees in the context of reinstatement, again based on the holding in Miller. See In re Petroff (6th Cir.BAP, 2001); In reLake (N.D.Ohio 2000), 245 B.R. 282; In re Landrum (S.D.Ohio 2001),267 B.R. 577.
 {¶ 25} As did the trial court, appellees rely on Washington Mut. Bankv. Mahaffey, 154 Ohio App.3d 44, 2003-Ohio-4422, 796 N.E.2d 39, andDavidson v. Weltman, Weinberg Reis (S.D.Ohio 2003),285 F. Supp.2d 1093. In Mahaffey, the Second District Court of Appeals addressed the issue of whether a mortgagee could require, as a condition of reinstatement of a mortgage loan, the payment of attorney's fees. The mortgage at issue contained a provision very similar to the ones at issue in this case. The Court distinguished those cases which held that such a provision is against public policy and void. The Court reasoned:
 {¶ 26} "Mahaffey's obligation to pay attorney fees is not provided in the mortgage instrument in this case as an obligation upon foreclosure but as a condition of reinstatement of the loan. While Mahaffey is entitled to all of the legal protections afforded under the laws pertaining to the foreclosure of mortgage liens, including the right of redemption, he is not entitled by law to reinstate a mortgage loan, once it is in default. Once a borrower defaults upon a mortgage loan, the lender is entitled, even if the borrower should exercise his right of redemption, to be paid in full and sever its relationship with the borrower. The bank chose to provide in its contract with Mahaffey for the possibility that the loan might be reinstated, preserving the relationship between borrower and lender, upon certain conditions. One of these is the payment of attorney fees. We see nothing against public policy in imposing the requirement of the payment of attorney fees expended in foreclosure proceedings as a condition of reinstatement of a mortgage loan. If the loan were not reinstated, the borrower would be entitled to its remedies in foreclosure, and it has expended attorney fees toward that end. It is reasonable that the mortgagee should require, as a condition of abandoning the foreclosure action and reinstating the loan, that it recover its attorney fees expended in the foreclosure action that it is abandoning." Id. at ¶ 39.
 {¶ 27} The Court then went on to hold that the payment of attorney's fees was permitted because it was "merely a condition for reinstatement, not an obligation that arises in connection with the enforcement of the contract." Id. at ¶ 40.
 {¶ 28} Like the Second District Court of Appeals in Mahaffey, the United States District Court for the Southern District of Ohio reached a similar conclusion in Davidson v. Weltman, Weinberg Reis (S.D.Ohio 2003), 285 F. Supp.2d 1093. Like the present case, Davidson involved a putative class action challenging the collection of attorneys' fees as a condition of a mortgage reinstatement. After reviewing all the key precedents applying Ohio common law to a contractual agreement to pay attorneys' fees, including Miller, Worth, Nottingdale, andMahaffey, the Court ultimately agreed with the reasoning inMahaffey and dismissed the class action. The Court explained:
 {¶ 29} "[U]pon default, the mortgagor has no obligation to seek reinstatement of his mortgage. To the contrary, she may, inter alia, decide to allow the foreclosure proceedings to continue and to avail herself of the remedies available through that proceeding. Thus, the reinstatement provision in the mortgage creates no obligation to pay attorney's fees upon default. Consequently, the payment of attorney's fees as a condition of reinstatement does not implicate the public policy concern in Miller regarding the imposition of a penalty against the debtor upon default and its concern with usury." Id. at 1103.
 {¶ 30} Appellants argue that Mahaffey and Davidson offer no reasonable basis for the distinction with regard to the public policy considerations that have led the Ohio Supreme Court and the Ohio General Assembly to preclude the enforcement of attorney fee provisions in non-commercial contracts of indebtedness. First, appellants argue that the distinction made between a reinstatement and foreclosure is illusory. Second, appellants argue that the real issue is the borrower had no choice as to the inclusion of the attorney provision in the mortgage agreement. Third, appellants scoff at the notion that the reinstatement provision, with its attendant attorney fees, was somehow included out of the goodness of the bank's hearts to protect Ohio residents.
 {¶ 31} In this case, the evolution of Ohio common law in this area seems to support the trial court's conclusion. First, here, the attorney fee provision was incorporated into the mortgage by the lender. However, like the situation in Worth, such a provision is not in the sole interest of the lender. The provision allows the borrower to work out an agreement with the lender and retain their home. Additionally, it is unlike the situation in Miller where it was clear that the attorney fee provision was one-sided in favor of the lender and acted as a penalty upon the borrower.
 {¶ 32} Second, the distinction highlighted in Mahaffey is persuasive. The payment of attorney fees is only a condition for reinstatement, not an obligation that arises in connection with the enforcement of the loan contract.
 {¶ 33} Turning to legislative support for their position that such attorney fee provisions are unenforceable, appellants next rely on certain provisions of the Ohio Revised Code. First, appellants point to R.C. 1301.21.[2] That section allows a provision to pay attorneys' fees upon default in a commercial debt contract in excess of $100,000. There, appellants maintain, the General Assembly made it clear that, by allowing attorney fees in commercial contracts of indebtedness, stipulations to pay attorney fees on contracts of indebtedness for purposes that are personal, family, or household are not enforceable.
 {¶ 34} In response, appellees argue that R.C. 1301.21 extends the principles of freedom of contract articulated in Worth andNottingdale, thereby further limiting the scope of Miller and other cases upon which appellants rely.
 {¶ 35} R.C. 1301.21(A)(2) defines "commitment to pay attorneys' fees" as "an obligation to pay attorneys' fees that arises in connection with the enforcement of a contract of indebtedness." A requirement to pay attorney fees as a condition of reinstatement of a contract of indebtedness does not constitute an obligation to pay attorney fees "that aris[e] in connection with the enforcement of a contract of indebtedness." Washington Mut. Bank v. Mahaffey, 154 Ohio App.3d 44,2003-Ohio-4422, 796 N.E.2d 39, at ¶ 40. Like Mahaffey, appellants were not, and are not, obliged to seek reinstatement of the loan. If appellants seek reinstatement of the loan, the payment of attorney fees is merely a condition for reinstatement, not an obligation that arises in connection with the enforcement of the contract. Therefore, R.C.1301.21 is inapplicable to the case at hand. R.C. CHAPTER 1321
 {¶ 36} Next, appellants cite to R.C. Chapter 1321 which permits lenders, in specific situations, to recover attorney fees incurred in foreclosure of a mortgage. However, appellants highlight that the statute is limited to mortgages for less than $5,000 and does not apply to organizations such as appellees herein including banks, trust companies, savings and loan associations, or credit unions.
 {¶ 37} R.C. 1321.57(H)(1), which gives a lender authority to recover attorney fees it incurred in the enforcement of a mortgage contract, states, in part:
 {¶ 38} "In addition to the interest and charges provided for by this section, no further or other amount, whether in the form of broker fees, placement fees, or any other fees whatsoever, shall be charged or received by the registrant, except costs and disbursements in connection with any suit to collect a loan or any lawful activity to realize on a security interest or mortgage after default, including reasonable attorney fees incurred by the registrant as a result of the suit or activity and to which the registrant becomes entitled by law * * *[.]"
 {¶ 39} Additionally, R.C. 1321.53(D)(1) provides:
 {¶ 40} "Sections 1321.51 to 1321.60 of the Revised Code do not apply to any of the following:
 {¶ 41} "(1) Persons lawfully doing business under the authority of any law of this state, another state, or the United States relating to banks, savings banks, trust companies, savings and loan associations, or credit unions[.]"
 {¶ 42} As OMBA and Freddie Mac correctly note in the amicus brief, appellants fail to explain why the General Assembly chose to make the attorney fee provision found in R.C. 1321.57(H)(1) inapplicable to organizations similar to appellees. OMBA and Freddie Mac assert that legislative history indicates that the General Assembly believed that attorney fees already may be collected by banks, and that therefore their inclusion was unnecessary. In an amendment to delete the authority to collect attorney fees, the Senate Committee affirmed the attorney fee authority instead. CONCLUSION
 {¶ 43} In this case, the evolution of Ohio common law in this area seems to support the trial court's conclusion. First, here, the attorney fee provision was incorporated into the mortgage by the lender. However, like the situation in Worth, such a provision is not in the sole interest of the lender. The provision allows the borrower to work out an agreement with the lender and retain their home. Additionally, it is unlike the situation in Miller where it was clear that the attorney fee provision was one-sided in favor of the lender and acted as a penalty upon the borrower.
 {¶ 44} Second, the distinction highlighted in Mahaffey is persuasive. The payment of attorney fees is only a condition for reinstatement, not an obligation that arises in connection with the enforcement of the loan contract.
 {¶ 45} Third, as explained above, the Ohio Revised Code sections relied upon by appellants really fail to support their position.
 {¶ 46} Accordingly, appellants' sole assignment of error is without merit.
 {¶ 47} The judgment of the trial court is hereby affirmed.
Vukovich, J. and DeGenaro, P.J., concurs.
[1] Lerner Sampson has filed an appellate brief in this matter. As their brief acknowledges, the trial court's decision dismissing them really did not address appellants' specific claims against Lerner Sampson. Lerner Sampson represented Bank One, Principal, and CMMC in certain foreclosure actions involving some of the appellants. However, Lerner Sampson collected its fees from the banks it represented, not from the invidividual appellants.
[2] {¶ a} R.C. 1301.21 provides:
{¶ b} "A) As used in this section:
{¶ c} "(1) `Contract of indebtedness' means a note, bond, mortgage, conditional sale contract, retail installment contract, lease, security agreement, or other written evidence of indebtedness, other than indebtedness incurred for purposes that are primarily personal, family, or household.
{¶ d} "(2) `Commitment to pay attorneys' fees' means an obligation to pay attorneys' fees that arises in connection with the enforcement of a contract of indebtedness.
{¶ e} "(3) `Maturity of the debt' includes maturity upon default or otherwise.
{¶ f} "(B) If a contract of indebtedness includes a commitment to pay attorneys' fees, and if the contract is enforced through judicial proceedings or otherwise after maturity of the debt, a person that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment, to the extent that the commitment is enforceable under divisions (C) and (D) of this section.