DECISION AND JUDGMENT ENTRY
{¶ 1} Joseph and Christy Schwamberger (the Schwambergers) appeal the trial court's decision granting judgment in favor of HomEq Servicing Corporation, Inc. (HomEq) on its foreclosure complaint and dismissing their counterclaim for damages relating to an assessment of attorney fees. The trial court initially issued a judgment entry granting HomEq's motion to dismiss the Schwambergers' counterclaim; but then, without any other motion pending, it issued a "nunc pro tunc" entry that restated its dismissal of the counterclaim and also granted HomEq summary judgment on its complaint. *Page 2 
 {¶ 2} The Schwambergers contend that the trial court erred in granting judgment in HomEq's favor because there was no motion for summary judgment pending, they did not receive notice that the court was considering the merits of HomEq's claims, and there was no determination of the disputed facts. Because the trial court lacked authority to sua sponte enter judgment in the absence of a pending motion, we reverse that judgment.
 {¶ 3} The Schwambergers also contend that the trial court erred in dismissing their counterclaim, which alleged HomEq improperly collected attorney fees in connection with several prior reinstatements of their mortgage. They argue that Ohio public policy prohibiting contractual provisions for the payment of attorney fees "in connection with the enforcement of a residential mortgage" also prohibits assessing attorney fees as a condition of reinstatement of the mortgage after a default. However, there is a distinction between illegal default-based attorney fees provisions in mortgages and contractual provisions that require the payment of attorney fees as a condition of reinstatement. Because the latter are not in the sole interest of the lender and do not serve as a penalty against the borrower who is under no obligation to reinstate the mortgage, attorney fee provisions in forbearance agreements do not violate public policy. Thus, the Schwambergers' counterclaim fails to state a claim upon which relief can be granted and we overrule their second assignment of error.
 I. Facts {¶ 4} In February 1996, TMS Mortgage, Inc., loaned the Schwambergers $34,400.00, which it secured by a mortgage on their residence. After TMS sold *Page 3 
the loan, the Bank of New York became the trustee for administering the loan, and HomEq began servicing it on behalf of the Bank of New York. Over a period of several years, HomEq initiated a series of mortgage foreclosures against the Schwambergers. HomEq dismissed each of these prior actions after the parties entered into agreements, which effectively reinstated the loans upon payment of the arrearages. The mortgage contained a reinstatement provision that allowed the Schwambergers to reinstate the mortgage if they met certain conditions. The Schwambergers allege that prior to reinstating the mortgage, each of the agreements required them to reimburse HomEq for attorney fees and other costs it incurred in prosecuting the foreclosure actions. They also contend the reinstatement provisions of the mortgage do not provide for the assessment of attorneys fees, contrary to the provisions of the default forbearance agreements they actually signed.
 {¶ 5} HomEq initiated this foreclosure action on February 23, 2004. After the trial court granted HomEq default judgment, the Schwambergers filed a Civ.R. 60(B) motion for relief from judgment, which the trial court granted. Then the Schwambergers filed an answer, which denied the allegations in HomEq's complaint. They also filed a counterclaim that contended HomEq had fraudulently induced them into signing "default forbearance agreements" in violation of state and federal debt collection law. The Schwambergers later filed a second amended class action counterclaim ("counterclaim"), which alleged HomEq wrongfully assessed attorney fees in connection with the multiple reinstatements of their mortgage loan. They set forth two causes of action *Page 4 
against HomEq — one for violation of Ohio common law and the other for unjust enrichment — on behalf of the Schwambergers individually, and as representatives of a putative class of aggrieved Ohio residents.
 {¶ 6} HomEq filed a Civ.R. 12(B)(6) motion to dismiss the counterclaim, and the Schwambergers opposed the motion. In an entry dated March 5, 2006, the trial court granted HomEq's motion and dismissed the counterclaim. Then, on March 21, 2006, the trial court entered a "nunc pro tunc" judgment entry.
 {¶ 7} In its "nunc pro tunc" entry, the trial court reiterated its prior dismissal of the counterclaim but, in spite of the fact no other motion was pending, the trial court also granted judgment in HomEq's favor on its foreclosure complaint. Specifically, the court awarded judgment against the Schwambergers in the amount of $32,497.17 (the principal indebtedness); interest; amounts HomEq expended for the protection or preservation of the premises; and late charges, default interest, and costs of collection, including "reasonable attorney fees, to the extent that such items are provided for in the Loan Documents and permitted by Ohio law." The trial court also found that the mortgage was valid and ordered a foreclosure sale of the premises. This appeal followed.
 II. Assignments of Error {¶ 8} The Schwambergers raise two assignments of error:
 ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANTS-APPELLANTS IN GRANTING A NUNC PRO TUNC JUDGMENT TO THE PLAINTIFF-APPELLEE WITHOUT A MOTION, HEARING, DETERMINATION OF FACTUAL ISSUES, OR NOTICE. *Page 5 
 ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANTS-APPELLANTS IN GRANTING JUDGMENT TO THE PLAINTIFF-APPELLEE ON THE DEFENDANTS-APPELLANTS' COUNTERCLAIM ON THE GROUND THAT IT FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.
 III. Summary Judgment {¶ 9} The Schwambergers contend that the trial court erred in granting summary judgment to HomEq because there was no motion for summary judgment pending. They contend that they filed an answer denying the allegations in HomEq's complaint, that there was no trial, hearing, or other determination of the factual issues, and they had no notice that the trial court was considering the merits of HomEq's claims. The Schwambergers argue that because no motion was pending, the trial court had no authority under Ohio law to sua sponte grant summary judgment in HomEq's favor. HomEq contends the trial court was authorized to enter judgment in its favor because all relevant evidence was before the trial court, no genuine issues of material fact exists, and HomEq was entitled to judgment as a matter of law. HomEq points to the loan officer's affidavit submitted in support of its motion for default judgment, as well as the note and mortgage attached to the complaint.
 {¶ 10} "Generally, the purpose of a nunc pro tunc entry is to correct an omission in a prior judgment and enter upon the record the judicial action actually taken, but erroneously omitted, from the record."State v. Johnson, Scioto App. No. 07CA3135 07CA3136, 2007-Ohio-7173, at ¶ 11, citing Roth v. Roth (1989), 65 Ohio App.3d 768, 771,585 N.E.2d 482; State v. Breedlove (1988), *Page 6 46 Ohio App.3d 78, 81, 546 N.E.2d 420; Mckay v. Mckay (1985),24 Ohio App.3d 74, 75, 493 N.E.2d 317. Nunc pro tunc entries should not be used to reflect what a court might decide, should decide or intended to decide, but, rather, what in fact a court actually did decide. State v.Johnson, supra, at ¶ 11, citing Leaseway Distribution Centers, Inc. v.Ohio Dept. of Adm. Serv. (1988), 49 Ohio App.3d 99, 108, 550 N.E.2d 955. It essentially is a method to correct scriveners' errors.
 {¶ 11} The court's "nunc pro tunc" entry does not reference Civ.R. 56 or use the term "summary judgment." Thus, we are not certain that the entry granted "summary judgment." We are certain that there was no trial and no dispositive motion pending on the complaint. Regardless of whether the judgment was on the pleadings or summary under Civ.R. 56, the due process concerns that follow apply equally to any procedural mechanism the court may have had in mind.
 {¶ 12} Civ.R. 7(B)(1) states in part that "an application to the court for an order shall be by motion which, unless made during a hearing or a trial, shall be made in writing. A motion, whether written or oral, shall state with particularity the grounds therefore, and shall set forth the relief or order sought." Therefore, when a party moves for summary judgment, they must state their reasons with particularity so that the non-moving party has notice and an opportunity to marshal evidence as required by Civ.R. 56(E). Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 114, 526 N.E.2d 798.
 {¶ 13} By acting in the absence of a pending motion, the trial court denied the Schwambergers due process because they did not have notice and an *Page 7 
opportunity to contest a sua sponte disposition. Marshall v.Aaron (1984), 15 Ohio St.3d 48, 472 N.E.2d 335, at syllabus and ¶¶ 50-51. See, also, Gibbs v. Ohio Adult Parole Auth., Ross App. No. 01CA2622, 2002-Ohio-2311. While HomEq argues that the trial court had before it all of the relevant evidence to decide the case, the Schwambergers did not have an opportunity to marshal evidence to defeat summary judgment because they did not receive notice. As we explained in Gibbs,supra, the trial court may grant summary judgment for a non-moving party, but only after the other side has sought summary judgment with a properly filed motion. Id. at ¶ 10, citing Wilson v. Tucker (Jan. 14, 1997), Ross App. No. 96CA2209, Gilbert v. CRST, Inc. (May 15, 1991), Ross App. No. 1674, and Cincinnati Ins. Co. v. Standard-Keil HardwareMfg. Co., Inc. (March 27, 1989), Athens App. No. 1386.
 {¶ 14} In instances where trial courts have granted summary judgment when neither party moved for it, we have reversed the trial courts' sua sponte disposal of the case. See Besser v. Griffey (1993),88 Ohio App.3d 379, 382-83, 623 N.E.2d 1326, and Minix v. Collier (March 31, 1998), Scioto App. No. 97CA2523. Because there is no authority for the sua sponte entry of summary judgment in the absence of a pending motion, the trial court erred in granting judgment in HomEq's favor.
 IV. Dismissal of the Counterclaim {¶ 15} The Schwambergers also contend that the trial court erred in dismissing their counterclaim because Ohio law prohibits HomEq's practice of collecting attorney fees in connection with the reinstatement of a mortgage. They *Page 8 
rely on case law, including the Supreme Court of Ohio's decision inMiller v. Kyle (1911), 85 Ohio St. 186, 97 N.E. 372, which held the adoption of an early version of a uniform law on negotiable instruments did not supersede the common law prohibition against similar default-based attorney fees provisions. They also rely on various Ohio Revised Code provisions. HomEq contends that Miller and the statutory provisions do not apply to "forbearance agreements" and that Ohio public policy does not prohibit a borrower from voluntarily agreeing to reimburse a lender for its attorney fees as a condition of reinstatement of a mortgage in order to avoid foreclosure.[1]
 A. Standard of Review {¶ 16} Because it presents a question of law, we review a trial court's decision regarding a motion to dismiss independently and without deference to the trial court's determination. See Roll v. Edwards,156 Ohio App.3d 227, 235, 2004-Ohio-767, 805 N.E.2d 162; Noe v. Smith
(2000), 143 Ohio App.3d 215, 218, 757 N.E.2d 1164. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." State ex rel.Hanson v. Guernsey Cty. Bd. of Commrs. (1992), 65 Ohio St.3d 545, 548,605 N.E.2d 378. A trial court may not grant a motion to dismiss for failure to state a claim upon which relief may be granted unless it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." O'Brien v. Univ. CommunityTenants Union *Page 9 
(1975), 42 Ohio St.2d 242, 327 N.E.2d 753, syllabus; see, also,Greeley v. Miami Valley Maintenance Contractors, Inc. (1990),49 Ohio St.3d 228, 551 N.E.2d 981. Furthermore, when considering a Civ.R. 12(B)(6) motion to dismiss, the trial court must review only the complaint, accepting all factual allegations as true and making every reasonable inference in favor of the nonmoving party. Estate of Shermanv. Millhon (1995), 104 Ohio App.3d 614, 617, 662 N.E.2d 1098, 1100; see, also, JNS Enterprises, Inc. v. Sturgell, Ross App. No. 05CA2814,2005-Ohio-3200.
 B. Nature of the Agreements {¶ 17} Initially, we must determine the nature of the agreements under which HomEq seeks payment of its attorney fees. The mortgage contains a reinstatement provision. However, the agreements both parties refer to are styled "Default Forbearance Agreements."
 {¶ 18} Virtually all mortgages today contain acceleration clauses to give the mortgagee the right to declare the entire mortgage obligation due and payable. Upon a default or breach by the mortgagor, an acceleration becomes effective on the date specified in a written notice delivered by mortgagee to mortgagor. The notice may provide that the acceleration is effective immediately or at some future specified date. The mortgagor may cure the default and reinstate the mortgage by payment of all arrearages prior to the effective date of the acceleration. Subject to certain limitations, however, once a mortgage obligation is validly accelerated, only payment of the accelerated amount will be sufficient to avoid foreclosure. Once such limitation on acceleration is a *Page 10 
reinstatement provision in the mortgage, commonly set forth as "Borrower's Right to Reinstate," which affords the mortgagor the right to defeat acceleration by tendering arrearages before a certain date or event. See, generally, Restatement of Law on Property (3rd Ed.), § 8.1. The reinstatement provision in this mortgage appears in ¶ 19 and states:
 19. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to sale of the Property or entry of a judgment enforcing this Security Instrument if: (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Security Instrument; (c) Borrower pays all trustees' fees and court costs; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon such payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration has occurred. * * *
 {¶ 19} Forbearance involves a similar concept. A forbearance means "a delay in enforcing or a suspension of or a refraining from enforcing debts, rights of action, rights, privileges, claims or obligations." Webster's Third New Int'l Dictionary 886 (3d ed.1993). It is the "[r]efraining from doing something that one has a legal right to do. Giving of further time for repayment of obligation or agreement not to enforce a claim at its due date." Black's Law Dictionary 644 (7th ed.1999). "Forbearance from exercising a right or doing an act which one has a right to do is legal consideration." 3 Richard A. Lord, Williston on Contracts *Page 11 
§ 7:43, at 677 (4th ed.1992). See In re Backer, 51 Fed.Appx. 522, 2002 WL 31388769 (C.A.6 (Ky.)).
 {¶ 20} The Schwambergers would in fact have the contractual right to reinstate their mortgage after HomeEq initiated acceleration following their default, but only under the conditions found in ¶ 19. First, the Schwambergers would have to pay HomEq "all sums which then would be due" under the mortgage and note as if no acceleration had occurred. However, the Schwambergers did not exercise their rights under the reinstatement provision by agreeing to pay the entire amount due as if no acceleration had occurred, i.e., a lump sum payment of past due installments or principal and interest and perhaps any accrued interest. Instead, the parties entered into "default forbearance agreements," which allowed the Schwambergers to pay the past amount due over a period of time. In other words, HomEq agree to "forbear" or refrain from enforcing the accelerated loan obligation and also agreed to give the Schwambergers additional time to repay their arrearages, even though it had the legal right under the reinstatement provision to require the Schwambergers to pay the entire past due amount in a lump sum. As a "concession," however, the forbearance agreements required the Schwambergers to pay the attorney fees HomEq incurred in enforcing the terms of the mortgage and note. It also provided that HomEq would not "discontinue" the pending foreclosure until receipt of the last payment under the agreement and the account was current. The Schwambergers, in turn, were given the opportunity to reinstate their *Page 12 
mortgage, which they apparently were unable to do under the terms of the reinstatement provision, by paying their arrearages over a period of time.
 {¶ 21} Thus, it would seem that the parties did not enter into an agreement based strictly upon the terms of the reinstatement provision. Rather, the forbearance agreements constituted new, separate agreements. As consideration, Home agreed to forbear it legal rights under the note and mortgage, including its right under the reinstatement provision for a lump sum payment of arrearages, and the Schwambergers were permitted to avoid acceleration of the original loan obligation and to pay their arrearages over a period of time, provided that they paid the attorney fees HomEq incurred in enforcing the mortgage and note.
 C. Ohio Common Law and Attorney Fees {¶ 22} We turn now to the question of whether the attorney fee provisions in the forbearance agreements are illegal. In 1841, the Supreme Court of Ohio ruled that contractual agreements for the payment of attorney fees "are against the public policy of the country, and ought not to be enforced in courts of justice." State v. Taylor (1841),10 Ohio 378, 381. In 1893, the Court found that a term in a mortgage contract providing for the payment of reasonable attorney fees in a foreclosure action was void as against public policy. Leavens v. OhioNatl. Bank (1893), 50 Ohio St. 591, 34 N.E. 1089. In Miller v. Kyle
(1911), 85 Ohio St. 186, 97 N.E. 372, the Court reaffirmedTaylor and Leavans and held at paragraph one of the syllabus: "It is the settled law of this state that stipulations incorporated in *Page 13 
promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void."
 {¶ 23} In 1987, the Supreme Court of Ohio decided two cases that revisited the holding in Miller, but did not overturn it. See Worth v.Aetna Casualty Surety Co. (1987), 32 Ohio St.3d 238, 513 N.E.2d 253
and Nottingdale Homeowners' Assn., Inc. v. Darby (1987),33 Ohio St.3d 32, 514 N.E.2d 702. In Worth, the Court did not apply Miller where an attorney fee provision in an indemnification agreement was arrived at "through free and understanding negotiation" and where both parties "were able to protect their respective interests." Worth v. AetnaCasualty Surety Co., supra, at 243. Specifically, Worth held that "[a]n indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable and is not contrary to Ohio's public policy." Id. at 242. The Court distinguished negotiated indemnity agreements from ordinary debt instruments:
 When a stipulation to pay attorney fees is incorporated into an ordinary contract, lease, note or other debt instrument, it is ordinarily included by the creditor or a similar party to whom the debt is owed and is in the sole interest of such party. In the event of a breach or other default on the underlying obligation, the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation. In those circumstances, the promise to pay counsel fees is not arrived at through free and understanding negotiation.
 In contrast, the indemnity agreements at issue in the instant case present a circumstance in which it is in the interest of both the executives and the employer for the executives to enforce the terms of their Employment Agreements. It was in the executives' interest to have the means to enforce their employment contracts. It was in Union Commerce's interest to retain qualified personnel during and following a change of control and to provide its *Page 14 
executives with security by giving them the means to vindicate their rights under the contracts. Through free and understanding negotiation, both the executives and the employer were able to protect their respective interests. The fact that this indemnity agreement was assented to in this context distinguishes this case from the ordinary stipulation to pay attorney fees for breach of a debt obligation. This is not a situation of a one-sided attorney fees provision or one of imbalance, but one of making the indemnified parties whole. Consequently, our decision today leaves undisturbed our holding in Miller v. Kyle, supra, and like cases.
Id. at 242-243.
 {¶ 24} A month later, the Supreme Court of Ohio decidedNottingdale Homeowners' Assn., Inc. v. Darby, supra. InNottingdale, the Court held that provisions in a condominium association's declaration and by-laws requiring the payment of attorney fees incurred by the condominium owners' association in either a collection or foreclosure action for unpaid assessments are "enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case."Nottingdale at syllabus. In distinguishing Miller, the Court noted that"Miller is factually a far cry from the case now before us which involves a specific contractual provision that was assented to in a noncommercial setting by competent parties with equal bargaining positions and under neither compulsion nor duress." Id. at 35. The Court also noted that "[i]t has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced" and that ["government interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts." Id. at 36. The Court went on to hold that "a rule *Page 15 
of law which prevents parties from agreeing to pay the other's attorney fees, absent a statute or prior declaration of this court to the contrary[2] is outmoded, unjustified and paternalistic." Id. at 37.
 {¶ 25} The Schwambergers contend that HomEq's practice of recovering attorney fees as a condition of reinstating a residential mortgage violates Ohio public policy under Miller and its progeny. They argue Ohio law prohibits the recovery of attorney fees "in connection with the enforcement of a residential mortgage." And because contractual provisions that require the payment of attorney fees as a condition of reinstatement are "in connection" with the enforcement of that instrument, they are also illegal. Essentially, they contend that such contractual provisions are synonymous with default-based attorney fees stipulations and thus violate Ohio law. They also argue that the same public policy considerations apply because the terms are one-sided in favor of the lender, the borrower has no realistic choice as to the terms, and they are not the product of free understanding and negotiation between parties of equal bargaining power.
 {¶ 26} HomEq contends that Miller is inapplicable and points to a line of cases that has drawn a distinction between default-based attorney fee provisions and contractual agreements requiring the payment of attorney fees as a condition of mortgage reinstatement, holding that the latter are not contrary to public policy and are enforceable. See Wilborn v.Bank One Corp., Mahoning App. No. 04-MA-182, 2007-Ohio-596;Washington Mut. Bank. v. Mahaffey, *Page 16 154 Ohio App.3d 44, 796 N.E.2d 39, 2003-Ohio-4422; Davidson v. Weltman, Weinberg Reis, (S.D.Ohio 2003) 285 F.Supp.2d 1093.
 {¶ 27} In Mahaffey, the Second District Court of Appeals considered the issue of whether a mortgagee could properly require the payment of attorney fees as a condition of reinstatement of a mortgage loan. Mahaffey argued that the mortgagee's demand for attorney fees as a condition of reinstatement was unenforceable under Ohio law and cited "a number of Ohio cases holding that provisions in a mortgage instrument for the payment of attorney fees, as part of the borrower's obligations upon foreclosure, is against public policy and void." Washington Mut.Bank. v. Mahaffey, supra, at 51. In distinguishing those cases, the court reasoned:
 Mahaffey's obligation to pay attorney fees is not provided in the mortgage instrument in this case as an obligation upon foreclosure but as a condition of reinstatement of the loan. While Mahaffey is entitled to all of the legal protections afforded under the laws pertaining to the foreclosure of mortgage liens, including the right of redemption, he is not entitled by law to reinstate a mortgage loan, once it is in default. Once a borrower defaults upon a mortgage loan, the lender is entitled, even if the borrower should exercise his right of redemption, to be paid in full and sever its relationship with the borrower. The bank chose to provide in its contract with Mahaffey for the possibility that the loan might be reinstated, preserving the relationship between borrower and lender, upon certain conditions. One of these is the payment of attorney fees. We see nothing against public policy in imposing the requirement of the payment of attorney fees expended in foreclosure proceedings as a condition of reinstatement of a mortgage loan. If the loan were not reinstated, the borrower would be entitled to its remedies in foreclosure, and it has expended attorney fees toward that end. It is reasonable that the mortgagee should require, as a condition of abandoning the foreclosure action and reinstating the loan, that it recover its attorney fees expended in the foreclosure action that it is abandoning.
Id. at 51-52. *Page 17 
 {¶ 28} Thus, the court concluded that the requirement of the payment of attorney fees as a condition of reinstatement of a mortgage loan is not unlawful under Ohio law. Id.
 {¶ 29} The Seventh District Court of Appeals reached a similar conclusion in Wilborn v. Bank One Corp., supra. Wilborn involved a class action lawsuit challenging the collection of attorney fees as a condition of a mortgage reinstatement. In Wilborn, the borrowers claimed the lenders violated public policy when they assessed and received attorney fees in connection with the mortgage loan agreements. In dismissing the action, the court followed the reasoning inMahaffey:
 In this case, the evolution of Ohio common law in this area seems to support the trial court's conclusion. First, here, the attorney fee provision was incorporated into the mortgage by the lender. However, like the situation in Worth, such a provision is not in the sole interest of the lender. The provision allows the borrower to work out an agreement with the lender and retain their home. Additionally, it is unlike the situation in Miller where it was clear that the attorney fee provision was one-sided in favor of the lender and acted as a penalty upon the borrower. Second, the distinction highlighted in Mahaffey is persuasive. The payment of attorney fees is only a condition for reinstatement, not an obligation that arises in connection with the enforcement of the loan contract.
Wilborn v. Bank One Corp., supra, at ¶¶ 31-32.
 {¶ 30} Finally, HomEq relies on Davidson v. Weltman, Weinberg Reis, supra. Like Wilborn, Davidson involved a putative class action challenging the collection of attorney fees as a condition of a mortgage reinstatement. In dismissing the action, the district court also followed the court's reasoning in Mahaffey: *Page 18 
 As recognized in Mahaffey, upon default, the mortgagor has no obligation to seek reinstatement of his mortgage. To the contrary, she may, inter alia, decide to allow the foreclosure proceedings to continue and to avail herself of the remedies available through that proceeding. Thus, the reinstatement provision in the mortgage creates no obligation to pay attorney's fees upon default. Consequently, the payment of attorney's fees as a condition of reinstatement does not implicate the public policy concern in Miller regarding the imposition of a penalty against the debtor upon default and its concern with usury.
Davidson v. Weltman, Weinberg Reis, supra, at 1103.
 {¶ 31} The Schwambergers argue that Mahaffey, Wilborn, andDavidson were improperly decided because reinstatement provisions that require the payment of attorney fees are in fact "in connection" with the enforcement of the mortgage, e.g., reinstatement serves as an alternative to foreclosure. They also argue that these cases are distinguishable from the present case because their mortgage's reinstatement provision required them to pay "trustee fees" but did not expressly require them to pay HomEq's "attorney's fees," and thus, the default forbearance agreements were either "connected" to the mortgage or they constituted new adhesive contracts.
 {¶ 32} We reject the contention that Mahaffey, Wilborn, andDavidson are based upon faulty reasoning and conclude that contractual provisions requiring the payment of attorney fees as a condition of forbearance and/or reinstatement do not violate Ohio public policy. Contractual provisions that require borrowers to pay a lender's attorney fees as a condition of forbearance and/or reinstatement of their mortgage are distinguishable from the attorney fees provision inMiller because they create no obligation to pay attorney fees upondefault. Rather, the obligation to pay attorney fees only arises as a condition to reinstate the *Page 19 
mortgage. In other words, the mortgage does not require the Schwambergers to pay attorney fees in the event of a default on the underlying obligation; the contractual obligation to pay attorney fees under the default forbearance agreements the parties used here is not a stipulation to pay attorney fees for breach of a debt obligation. The Schwambergers' obligation to pay HomEq's attorney fees was based on their election to reinstate their mortgage under the terms of the default forbearance agreements.
 {¶ 33} The public policy concerns at issue in Miller are not implicated here. While the requirement that the Schwambergers pay HomEq's attorney fees was incorporated into the default forbearance agreements by HomEq, those contractual provisions are not in the sole interest of the lender. Default forbearance agreements allow a borrower to avoid foreclosure and reinstate the loan provided that certain conditions are met; and it is reasonable for a lender, as a condition of abandoning the foreclosure action and reinstating the loan, to require a borrower to pay attorney fees it incurs in its prior foreclosure action. Nor do such provisions act as a penalty against the borrower because the obligation to pay attorney fees is not default-based and only arises if the borrower elects to reinstate their mortgage.
 {¶ 34} Finally, the Schwambergers argue that they had a contractual right under the mortgage to reinstate their mortgage without paying HomEq's attorney fees, i.e., the terms of the reinstatement provision in the mortgage did not provide for the assessment of attorney fees. Thus, they contend the provision for those fees in the default forbearance agreement was improper. However, the *Page 20 
Schwambergers did not file a breach of contract claim; rather they claim that the terms of the default forbearance agreements that required them to pay HomEq's attorney fees were contrary to public policy and illegal. Because we conclude contractual provisions that require the payment of attorney fees as a condition of forbearance and reinstatement do not violate Ohio public policy, we reject the Schwambergers' argument that HomEq improperly assessed attorney fees under the terms of the default forbearance agreements in violation of Ohio law.
 D. Ohio Statutory Provisions {¶ 35} In further support of their contention that Ohio law prohibits attorney fee provisions in residential mortgages, the Schwambergers also point to the enactment of various Ohio Revised Code provisions, which they contend created only limited exceptions to the common law prohibition against attorney fee provisions in contracts of indebtedness. First, they point to R.C. 1301.21 for the proposition that attorney fee provisions are enforceable only in commercial contracts of indebtedness in excess of $100,000.[3] They contend that, by *Page 21 
allowing attorney fee provisions in certain debt instruments, the General Assembly, by implication, invalidated attorney fee provisions in other types of debt instruments, i.e., residential mortgages.
 {¶ 36} HomEq argues that this statute does not apply and that it actually extends the freedom of contract rationale espoused inNottingdale, supra. HomEq also correctly points out that the same argument was rejected by Seventh District Court of Appeals inWilborn.
 {¶ 37} R.C. 1301.21 (A)(2) defines "commitment to pay attorney fees" as "an obligation to pay attorney fees that arises in connection with the enforcement of a contract of indebtedness." As we have already determined, however, a requirement to pay attorney fees as a condition of reinstatement of a mortgage does not constitute an obligation to pay attorney fees that arises in connection with the enforcement of a mortgage. The requirement to pay attorney fees is connected to the reinstatement of the mortgage, not enforcement of the mortgage upon default. The Schwambergers are not obligated to seek reinstatement of their mortgage. Thus, the payment of attorney fees is a condition of reinstatement, not an obligation in connection with the enforcement of a contract of indebtedness. See Wilborn v. Bank One Corp., supra, at ¶ 35, citing Washington Mut. Bank. v. Mahaffey, supra, at ¶ 40. *Page 22 
 {¶ 38} The Schwambergers also refer to "other statutes in R.C. Chapter 1321 which allow certain lenders to recover attorney fees in certain circumstances."[4] See R.C 1321.57. However, as the Schwambergers point out, that statute does not apply to certain entities, including banks, trust companies, saving and loan associations, or credit unions. See R.C. 1321.53(D)(1). Essentially, the Schwambergers claim that this statute merely created an exception to the common law prohibition of attorney fees provisions in contracts of indebtedness. However, because we reject their argument that Ohio common law prohibits the payment of attorney fees as a condition of reinstatement, we also reject their argument that such contractual provisions are therefore implicitly prohibited by statute.
 V. Conclusion {¶ 39} We conclude the trial court erred in granting HomEq judgment on its complaint, and therefore we sustain the Schwambergers' first assignment of error. However, having found no merit in their second assignment of error, we affirm the trial court's decision dismissing the counterclaim.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. *Page 23 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE BE REMANDED. Appellee and Appellants shall split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] HomEq also argues that The National Bank Act preempts any state law that purports to prohibit the charging of fees in conjunction with a residential mortgage loan. Because we conclude that Ohio law does not prohibit contractual provisions for the payment of attorney fees as a condition of forbearance, we need not address HomEq's preemption argument.
[2] In footnote 7, the Court noted that "[a] contract of adhesion, where the party with little or no bargaining power has no realistic choice as to terms, would likewise not be supportable".
[3] R.C. 1301.21 states, in part:
 (A) As used in this section:
 (1) "Contract of indebtedness" means a note, bond, mortgage, conditional sale contract, retail installment contract, lease, security agreement, or other written evidence of indebtedness, other than indebtedness incurred for purposes that are primarily personal, family, or household.
 (2) "Commitment to pay attorneys' fees" means an obligation to pay attorneys' fees that arises in connection with the enforcement of a contract of indebtedness.
 (3) "Maturity of the debt" includes maturity upon default or otherwise.
 (B) If a contract of indebtedness includes a commitment to pay attorneys' fees, and if the contract is enforced through judicial proceedings or otherwise after maturity of the debt, a person that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment, to the extent that the commitment is enforceable under divisions (C) and (D) of this section.
 (C) A commitment to pay attorneys' fees is enforceable under this section only if the total amount owed on the contract of indebtedness at the time the contract was entered into exceeds one hundred thousand dollars.
[4] See R.C. 1321.57(H)(1), which states:
 In addition to the interest and charges provided for by this section, no further or other amount, whether in the form of broker fees, placement fees, or any other fees whatsoever, shall be charged or received by the registrant, except costs and disbursements in connection with any suit to collect a loan or any lawful activity to realize on a security interest or mortgage after default, including reasonable attorney fees incurred by the registrant as a result of the suit or activity and to which the registrant becomes entitled by law * * *[.] *Page 1