WASHINGTON MUTUAL BANK, Appellee,

v.

MAHAFFEY, Appellant.

[Cite as *Washington Mut. Bank v. Mahaffey,* 154 Ohio App.3d 44, 2003-Ohio-4422.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19651.

Decided Aug. 22, 2003.

Pamela S. Petas, for appellee.

Andrew M. Engel, for appellant.

FAIN, Presiding Judge.

{¶ 1} Defendant-appellant William C. Mahaffey appeals from a summary judgment rendered against him, in favor of plaintiff-appellee Washington Mutual Bank, in a foreclosure action upon a mortgage loan between the parties. Mahaffey contends that the trial court erred by rendering summary judgment because the evidence in the record demonstrates the existence of a genuine issue of material fact with respect to his equitable defense that the bank failed to comply with regulations of the United States Department of Housing and Urban Development—specifically, Section 203.604, Title 214, C.F.R., which require a lender, before bringing a foreclosure action against a defaulting borrower, either to have a face-to-face meeting with the borrower, or to make "a reasonable effort" to arrange a face-to-face meeting. Mahaffey also contends that the trial court erred by concluding that the requirement, as a condition of reinstatement of a mortgage loan, that a borrower pay attorney fees, is lawful under Ohio law. Finally,

Mahaffey contends that the trial court erred in rendering summary judgment, because the bank failed to present sufficient evidence, pursuant to Civ.R. 56, to establish the amount of its damages.

{¶ 2} We conclude that the trial court correctly determined that, pursuant to Ohio law, the requirement of the payment of attorney fees as a condition of reinstatement of a mortgage loan is not unlawful. Furthermore, we conclude that the evidence submitted by the bank was sufficient, pursuant to Civ.R. 56, to establish the amount of its damages. However, we agree with Mahaffey that the evidence in the record demonstrates the existence of a genuine issue of material fact with respect to his equitable defense of the bank's alleged failure to have complied with Section 203.604. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

I

{¶ 3} In March 2000, Mahaffey gave Bank United a promissory note in the amount of $71,411, secured by a mortgage lien on Mahaffey's real property in Montgomery County. Plaintiff-appellee Washington Mutual Bank succeeded to the interest of Bank United by merger in February 2001. The mortgage loan that is the subject of this cause of action is federally insured and is subject to regulations of the United States Department of Housing and Urban Development.

{¶ 4} In May 2000, Mahaffey became delinquent on the mortgage loan. After a number of conversations, Washington Mutual Bank brought this action in foreclosure against Mahaffey. The bank moved for summary judgment.

{¶ 5} After Mahaffey responded to the bank's motion for summary judgment, Mahaffey sought, and was granted, leave to file an amended answer, in which he set forth additional defenses. He was then permitted to supplement his response to the bank's motion for summary judgment. The bank subsequently responded to Mahaffey's supplemental memorandum opposing its motion for summary judgment.

{¶ 6} The trial court found the bank's motion for summary judgment to be well taken and rendered judgment in its favor. From the judgment against him, Mahaffey appeals.

II

{¶ 7} Mahaffey's sole assignment of error is as follows:

{¶ 8} "The trial court erred in granting summary judgment on appellee's foreclosure claim."

{¶ 9} Mahaffey presents three issues for review:

## A

{¶ 10} "Whether there exists a genuine issue of material fact with respect to appellee's compliance with Department of Housing and Urban Development regulations governing federally insured mortgage loans."

{¶ 11} Mahaffey asserts that the bank's failure to have complied with Section 203.604 constitutes an equitable defense to the bank's foreclosure action. The bank concedes that failure of substantial compliance with the regulation constitutes an equitable defense but contends that it has succeeded in establishing, as a matter of law, that it did not fail to comply substantially with the regulation.

{¶ 12} Section 203.604 provides:

{¶ 13} "(b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. * * *

{¶ 14} "(c) A face-to-face meeting is not required if:

{¶ 15} "(1) * * *,

{¶ 16} "(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

{¶ 17} "(3) * * *,

{¶ 18} "(4) * * *, or

{¶ 19} "(5) A reasonable effort to arrange a meeting is unsuccessful.

{¶ 20} "(d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property."

{¶ 21} The bank first contends that none of this regulation is applicable herein because the requirement of a face-to-face interview, or a reasonable effort to arrange the interview, only exists before three full monthly installments due on the mortgage are unpaid. The bank appears to be arguing that once the three months elapse, the lender is under no obligation to arrange, or to have, a face-to-face interview. Alternatively, the bank may be arguing that during the three-

month period when monthly installments were due, but unpaid, its predecessor, Union Bank, had no obligation to comply with the face-to-face meeting requirement, because neither it, its servicer, nor a branch office of either, was located within 200 miles of Mahaffey, bringing this matter within the exception of Section 203.604(c)(2).

{¶ 22} We are not persuaded by the bank's argument. If the obligation to have, or to arrange, a face-to-face interview can be avoided simply by waiting three months before bringing a foreclosure action, the regulation has no practical force. Conversely, if a lender's failure either to have a face-to-face interview, or to make a reasonable effort to arrange the interview, within the first three months of default is deemed to preclude the lender from ever bringing a foreclosure action, the regulation would have too much force. A commonsense construction of the regulation is that it requires, subject to the exceptions contained in division (c)(2), that a lender either have a face-to-face interview or make a reasonable effort to arrange the interview before bringing a foreclosure action, and that the mortgagee is urged, by the regulation, to have the interview, or to make a reasonable effort to arrange the interview, within the three-month default period. We find support for this construction in Section 203.606(a), which provides:

{¶ 23} "Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met. The mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account. * * *"

{¶ 24} Thus, the scheme of the regulation is that a lender may not commence foreclosure until at least three full monthly installments are due but unpaid, and the lender, before initiating foreclosure, must ensure that the servicing requirements have been met, including the face-to-face interview requirement. It would be inconsistent with Section 203.606(a) to allow a lender to commence foreclosure after three full months of default, without having complied with the face-to-face interview requirements of Section 203.604(b). Although it would not be inconsistent with 203.606(a) to construe Section 203.604(b) to forever bar a foreclosure action when the lender has failed to comply with the face-to-face interview requirement during the first three months of default, we conclude that a construction to that effect would be unduly harsh to lenders, and we doubt that Washington Mutual Bank is urging that construction.

{¶ 25} The bank next contends that it comes within the exception of Section 203.604(c)(2) because neither it nor any of its branch offices is located within 200 miles of Mahaffey.

{¶ 26} Washington Mutual Bank appears to be located in Houston, Texas, which is clearly more than 200 miles away from Mahaffey. This issue appears to concern Washington Mutual Bank's branch office in Louisville, Kentucky. Mahaffey asserts, and the bank does not dispute, that Washington Mutual maintains a branch office in Louisville, Kentucky, which is within 200 miles of Mahaffey's residence in Dayton. The bank contends that the existence of its Louisville, Kentucky branch office is immaterial, because that office only originates mortgage loans, it does not service them. While that is an interesting observation, the exception from the face-to-face interview requirement contained Section 203.604(c)(2) refers to "a branch office of either [the mortgagee or its servicer]." Because the bank does not dispute that it has a branch office in Louisville, Kentucky, and does not dispute that that branch office is within 200 miles of Mahaffey, we conclude that the exception contained in Section 203.604(c)(2) does not apply to it.

{¶ 27} In short, we conclude that the requirement in Section 203.604(b) for a face-to-face interview or a reasonable effort to arrange an interview applies in this case.

{¶ 28} The bank next contends that it made a reasonable effort to arrange a face-to-face meeting. Although the bank refers to correspondence with Mahaffey, it has never averred that it sent him a certified letter. Section 203.604(d) provides that a "reasonable effort to arrange a face-to-face meeting * * * shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched." There appears to be no dispute that this minimum requirement was not satisfied.

{¶ 29} The bank also alludes to a visit made to the mortgage property. This is the subject of two paragraphs in the affidavit of Charles Latham, as follows:

{¶ 30} "10. On January 22, 2001 a representative of First American, on Bank United's behalf, visited personally visited [sic] defendant's mortgaged property. A copy of the record print-out documenting the visit to the property is attached as Exhibit E. [This exhibit does not appear in the record.]

{¶ 31} "11. On January 22, 2001, the representative described in paragraph 7 [sic, paragraph 10 may have been intended] left a card at the mortgaged property. Plaintiff does not have a copy of the actual card that was left at defendant's residence and is attempting to locate a sample of the card."

{¶ 32} Mahaffey contends that the visit of a representative alluded to above was for purposes of an appraisal, not to arrange a face-to-face meeting.

{¶ 33} Even if we were to deem the visit described in paragraphs 10 and 11 of Latham's affidavit to be the "one trip to see the mortgagor at the

mortgaged property," referred to in Section 203.604(d), it is clear from that regulation that the requirement of "at least one trip to see the mortgagor at the mortgaged property" is in addition to the minimal requirement of one letter sent to the mortgagor certified by the Postal Service. Section 203.604(d) clearly prescribes a certified letter as the minimum requirement for a reasonable effort to arrange a face-to-face meeting. The evidentiary materials submitted by the bank in support of its motion for summary judgment fail to establish, as a matter of law, that the bank satisfied the minimal requirements for a "reasonable effort" to arrange a face-to-face interview with the mortgagor, required by Section 203.604. Accordingly, there is a genuine issue of material fact, the bank failed to establish that it is entitled to judgment as a matter of law, and the trial court erred by awarding summary judgment.

B

{¶ 34} "Whether appellee breached its contract with appellant by demanding its attorneys fees from appellant upon any reinstatement of the loan."

{¶ 35} The next issue presented for review is whether the bank could properly require, as a condition of reinstatement of the mortgage loan, the payment of attorney fees.

{¶ 36} The mortgage instrument contains the following paragraph:

{¶ 37} "10. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay any amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. Borrower shall tender in a lump sum all amounts required to bring Borrower's account current, including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding."

{¶ 38} When Mahaffey requested a reinstatement figure from the bank, it included, as part of the amount required for reinstatement, its attorney fees incurred in the foreclosure action. Mahaffey contends that the bank's demand for attorney fees as a condition of reinstatement is unenforceable under Ohio law and constitutes a breach of the bank's obligations under the mortgage. In support of this proposition, Mahaffey cites a number of Ohio cases holding that provisions in a mortgage instrument for the payment of attorney fees, as part of the borrower's obligations upon foreclosure, is against public policy and void.

{¶ 39} In our view, all these cases are distinguishable. Mahaffey's obligation to pay attorney fees is not provided in the mortgage instrument in this case as an obligation upon foreclosure but as a condition of reinstatement of the

loan. While Mahaffey is entitled to all of the legal protections afforded under the laws pertaining to the foreclosure of mortgage liens, including the right of redemption, he is not entitled by law to reinstate a mortgage loan, once it is in default. Once a borrower defaults upon a mortgage loan, the lender is entitled, even if the borrower should exercise his right of redemption, to be paid in full and sever its relationship with the borrower. The bank chose to provide in its contract with Mahaffey for the possibility that the loan might be reinstated, preserving the relationship between borrower and lender, upon certain conditions. One of these is the payment of attorney fees. We see nothing against public policy in imposing the requirement of the payment of attorney fees expended in foreclosure proceedings as a condition of reinstatement of a mortgage loan. If the loan were not reinstated, the borrower would be entitled to its remedies in foreclosure, and it has expended attorney fees toward that end. It is reasonable that the mortgagee should require, as a condition of abandoning the foreclosure action and reinstating the loan, that it recover its attorney fees expended in the foreclosure action that it is abandoning.

{¶ 40} Mahaffey cites R.C. 1301.21 for the proposition that a commitment to pay attorney fees may not be included in a contract of indebtedness except under certain circumstances not applicable in this case. R.C. 1301.21(A)(2) defines "commitment to pay attorneys' fees" as "an obligation to pay attorneys' fees that arises in connection with the enforcement of a contract of indebtedness." In our view, a requirement to pay attorney fees as a condition of reinstatement of a contract of indebtedness does not constitute an obligation to pay attorney fees "that aris[e] in connection with the enforcement of a contract of indebtedness." Mahaffey was not, and is not, obliged to seek reinstatement of the loan. If he chooses to seek reinstatement of the loan, the payment of attorney fees is merely a condition for reinstatement, not an obligation that arises in connection with the enforcement of the contract. Therefore, we find R.C. 1301.21(B) inapplicable.

## C

{¶ 41} "Whether appellee established through admissible evidence the balance due on the note at issue."

{¶ 42} The final issue Mahaffey presents for review is whether the bank provided satisfactory evidence of the balance due on the note. Mahaffey contends that the bank failed to present an affidavit in which the amount due on the mortgage loan was established through personal knowledge of the affiant.

{¶ 43} Civ.R. 56 provides that parties moving for, or opposing, summary judgment may present affidavits in support of their respective positions, but that "supporting and opposing affidavits shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E).

{¶ 44} The bank presented the affidavit of Paula Batteau, in which she averred as follows:

{¶ 45} "1. Affiant's position is Foreclosure Unit Leader Bank United, that in such job position affiant has the custody and personal knowledge of the accounts of said company, and specifically with the account of William C. Mahaffey aka William E. Mahaffey, defendant herein.

{¶ 46} "2. Plaintiff is the holder of the note and mortgage [word or words missing in margin] are the subject of the within foreclosure action, copies [word or words missing in margin] are attached hereto as Exhibits 'A' and 'B'.

{¶ 47} "3. Affiant states that there has been a default in payment under the terms of the aforesaid note and mortgage. The account is due for the September 1, 2000 payment and all subsequent payments. Plaintiff has therefore elected to accelerate the entire balance due.

{¶ 48} "4. Affiant states that there is due on said account a principal balance of $71,191.60, together with interest thereon from August 1, 2000 at 8.500% percent per annum and as may be subsequently adjusted if provided for by the terms of the note and advances for taxes, insurance or otherwise expended to pro [sic, protect?] the property."

{¶ 49} We have not found "Exhibits A and B," referred to in Batteau's affidavit. As noted, there are some words, and parts of words, missing in the margin, the affidavit in the record appearing to be a photostatic copy. Mahaffey has never objected to the fact that the affidavit appears to be a copy rather than an original.

{¶ 50} Mahaffey contends that Batteau's affidavit fails to satisfy the requirement of Civ.R. 56(E) that it be made of personal knowledge and that it show affirmatively that Batteau is competent to testify to the matters stated in her affidavit.

{¶ 51} We conclude that Batteau's affidavit satisfies the requirements of Civ.R. 56(E). In it, Batteau avers that in her position, she has the custody and personal knowledge of the accounts of the bank, and specifically of Mahaffey's account. If, as she avers, Batteau has the custody of Mahaffey's account with the bank, she would know how much is due and owing thereupon.

{¶ 52} If Mahaffey were to present evidentiary material, perhaps in the form of his own affidavit, to contest the averments in Batteau's affidavit, then there might

be a genuine issue of material fact concerning the amount due on the note and mortgage, but he has not done so.

{¶ 53} In conclusion, we agree with Mahaffey that the evidence in the record fails to establish, as a matter of law, that the bank has satisfied the face-to-face meeting requirements set forth in Section 203.604. Accordingly, there is a genuine issue of material fact concerning Mahaffey's equitable defense alleging the bank's failure to comply with that regulation, and the trial court erred by rendering summary judgment against him.

{¶ 54} Mahaffey's sole assignment of error is sustained.

### III

{¶ 55} Mahaffey's sole assignment of error having been sustained, we reverse the judgment of the trial court, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN, J., concurs.

GRADY, J., concurs in judgment only.