[Cite as *Bank of Am. v. Bobovyik*, 2014-Ohio-5499.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BANK OF AMERICA, | ) | |
| | ) | CASE NO.    13 CO 54 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| DOUGLAS BOBOVYIK, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:         Civil Appeal from Common Pleas Court, Case No. 12CV482.

JUDGMENT:         Affirmed.


APPEARANCES:
For Plaintiff-Appellee:         Attorney John Wirthlin
Attorney Chrissy Dunn
1700 PNC Center
201 East Fifth Street
Cincinnati, Ohio  45202


For Defendant-Appellant:         Attorney Bruce Broyles
5815 Market Street, Suite 2
Boardman, Ohio  44512


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


Dated:  December 15, 2014

VUKOVICH, J.

{¶1} Defendant-appellant Douglas Bobovnyik (aka Bobovyik) appeals the judgment of the Columbiana Common Pleas Court entering summary judgment in favor of plaintiff-appellee Bank of America, N.A. on its foreclosure complaint. Appellant contends that there was a genuine issue concerning whether the bank complied with the condition precedent within the HUD regulation requiring the bank to make a reasonable effort at a face-to-face meeting. He claims there was no evidence the bank sent a representative to the property and the efforts to arrange a meeting were untimely. Appellant further argues that issues remained concerning his two affirmative defenses, stating there was a genuine issue as to whether he was credited with all payments made and as to whether he was denied his contractual right to reinstate the mortgage. For the following reasons, the judgment of the trial court is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2} On December 29, 2008, appellant signed a note for $251,332 in favor of Taylor, Bean & Whitaker Mortgage Corp. and secured the note by a mortgage over his residence in Salem, Ohio. Appellant agreed to pay $1,426.98 in principal and interest on the first day of each month beginning February 1, 2009. The mortgage was assigned to a company whom Bank of America, N.A. succeeded by merger.

{¶3} On October 8, 2009, a notice of default with intent to accelerate was generated seeking $5,650.47 by November 7, 2009. Foreclosure was sought and then dismissed. On July 12, 2012, the bank filed the within complaint for foreclosure, asserting entitlement to $249,550.13 plus 5.5% interest from July 1, 2009. The complaint stated that the bank complied with all conditions precedent in the note and mortgage.

{¶4} Appellant's answer stated in pertinent part: (1) the bank failed to comply with ¶6(B) of the note and ¶9(d) of the mortgage requiring compliance with HUD regulations prior to accelerating because the bank failed to make any effort to conduct a face-to-face meeting; (2) the bank did not properly credit him with payments for June, July, and August of 2009; and (3) the bank breached the

mortgage reinstatement clause in January of 2010, as a representative told him his attempt to pay the amount necessary to bring the account current would be rejected.

{¶5} The bank filed a motion for summary judgment, attaching an affidavit of a bank representative which incorporated by reference various business records including the payment history and the notice of intent to accelerate. Regarding efforts to arrange a meeting, the bank pointed out that it sent appellant a HUD regulation letter on March 15, 2012 (delivered on March 20, 2012), advising him of his options for assistance and attempting to arrange a face-to-face meeting.

{¶6} In anticipating appellant's affirmative defenses, the bank disputed that appellant attempted to reinstate the loan or that any amount offered would have been sufficient to bring the loan current. The bank also said that there was no evidence appellant made payments that were not credited to his account. The bank noted a failure to produce evidence in discovery to support these claims (and alleged a violation of Civ.R. 10(D), which requires the account or written instrument on which a defense is founded to be attached to the answer or an explanation provided).

{¶7} Appellant filed a three-page memorandum in opposition to summary judgment. In support of his argument that there was no reasonable effort to conduct a face-to-face meeting, appellant cited ¶9(d) of the mortgage and HUD regulation § 203.604 and stated that the bank failed to demonstrate that it sent someone to visit the property as required by that regulation. Appellant did not submit his own affidavit in support of his defense that he was not credited with all payments. Instead, he pointed to the payment history attached to the bank's motion and compared it to a call note, which he interprets as evidence that he told a bank employee that more payments were made than recorded.

{¶8} As to his reinstatement defense, appellant pointed out that ¶ 10 of the mortgage permits him to reinstate (even after the institution of foreclosure proceedings). He did not submit his own affidavit to show his reinstatement attempt. Instead, he pointed to the bank's discovery response and urged that call notes show that he called on January 20, 2010 to tell the bank that he would make two payments on different dates in the future and that he called again on January 25, 2010 to make

a $6,000 payment and was advised "due to loan in foreclosure he is not able." He concluded that these payments would have been sufficient to cover the default and foreclosure fees.

{¶9} The bank replied that the Homesaver-Workout Notes, which appellant attached to his opposition, provided evidence that a visit to the property was made (and that contact was unsuccessful). As to his two defenses, the bank urged that appellant should have responded with an affidavit to support his attempted reinstatement and uncredited payment claims and that an affidavit was needed to incorporate the various attachments to his memorandum. The bank alternatively urged that appellant drew incorrect conclusions from the material provided by the bank in discovery.

{¶10} On September 27, 2013, the trial court granted summary judgment in favor of the bank, entering judgment for $249,550.12 plus interest at 5.5% from July 1, 2009 and ordering foreclosure. Appellant filed a notice of appeal on December 20, 2013. Because evidence of service was not docketed, this court ruled on January 10, 2014, that the appeal was timely and could proceed.

{¶11} Appellant sets forth one assignment of error generally asserting that the trial court erred in granting summary judgment as genuine issues of material fact existed. He then specifically addresses the three main claims argued below: lack of property visit as required in making a reasonable effort to arrange a face-to-face meeting (with an added argument concerning the timing of the efforts), failure to credit all payments made, and breach of his right to reinstate the loan.

SUMMARY JUDGMENT

{¶12} Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). No evidence or stipulation may be considered except as stated in this rule. *Id.* Affidavits must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters

stated therein, and sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. Civ.R. 56(E).

**{¶13}** Thus, summary judgment can be granted where there remain no genuine issues of material fact for trial and where, after construing the evidence most strongly in favor of the nonmovant, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Byrd v. Smith*, 110 Ohio St.3d 24, 850 N.E.2d 47, 2006-Ohio-3455, ¶ 10, citing Civ.R. 56(C). The burden of showing that there are no genuine issues of material fact initially falls upon the party who files for summary judgment. *Id.*, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996).

**{¶14}** Thereafter, the nonmovant may not rest upon mere allegations or denials in the party's pleadings but must respond, through affidavit or as otherwise provided in the rule, by setting forth specific facts showing that there is a genuine issue for trial. *Id.*, citing Civ.R. 56(E). If the non-movant does not so respond, summary judgment, if appropriate, shall be entered against him. Civ.R. 56(E). Although courts are cautioned to construe the evidence in favor of the nonmoving party, summary judgment is not to be discouraged where a nonmovant fails to respond with proper evidence supporting the essentials of his claim. *See Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993).

<u>EFFORT AT FACE-TO-FACE MEETING</u>

**{¶15}** The mortgage provides at ¶ 9(d): "In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulation of the Secretary." Similarly, the note provides at ¶ 6(B):

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. * * * In many circumstances regulations issued by the Secretary will limit Lender's

rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. * * * "

**{¶16}** Appellant's answer cited these provisions and asserted that the bank failed to comply with a HUD regulation prior to accelerating by failing to make any effort to conduct a face-to-face meeting. The pertinent HUD regulation provides:

§ 203.604 Contact with the mortgagor.

(b) *The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.* * * *

(c) *A face-to-face meeting is not required if:*

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan [was entered and is current], or

(5) *A reasonable effort to arrange a meeting is unsuccessful.*

(d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. *Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property*, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property. (Emphasis added).

**{¶17}** Where similar compliance with HUD regulations was incorporated into the loan documents, this court ruled that § 203.604 creates a condition precedent to

foreclosure rather than an affirmative defense. *PNC Mtge. v. Garland*, 7th Dist. No. 12MA222, 2014-Ohio-1173, ¶ 5-6, 25 (holding that the claim of a lacking condition precedent must be raised in the answer with specificity under Civ.R. 9(C) or it is waived). As a result, we observed that the bank would bear the burden of establishing the absence of a genuine dispute as to whether it complied with the specific HUD regulation referred to in the debtor's answer. *Id.* at ¶ 23.

**{¶18}** The bank's affidavit stated that all conditions precedent were satisfied. (Affidavit of Assistant Vice President in Support of Summary Judgment). The affiant related the necessary information regarding business records and stated that he personally reviewed the attached records, including the "Face to Face letter." The affidavit then stated that the bank sent to appellant a HUD regulations letter which gave the Borrower the opportunity to set up a face-to-face meeting. That March 15, 2012 letter was attached and was specifically incorporated by reference into the affidavit.

**{¶19}** The letter, advising appellant of the options to avoid foreclosure through its enclosures, was delivered on March 20, 2012. This "Face to Face letter" explains that they would be sending a representative to meet with appellant at his home to collect documents to help review the loan and assistance options. It stated that appellant could schedule the visit on a day and time most convenient to him by calling a certain number. The letter advised that if they did not hear from appellant, the representative would attempt to visit the home over the next seven to ten days. It then explained what the representative would do during any meeting.

**{¶20}** Appellant does not deny that he received the letter or that he was offered a face-to face meeting therein, and he admitted in a request for admissions that he received the loss mitigation packet. Appellant argues that the bank's motion for summary judgment and the reply in support rely on only this letter to establish reasonable efforts at a meeting and this letter does not establish that at least one trip to see the mortgagor was then actually made by a representative (or an exception existed). Appellant thus argues that a letter asking him to set up a meeting and telling him that a representative will be coming in any event is not enough to meet the

summary judgment burden of showing reasonable efforts to conduct a face-to-face meeting as the bank must also state that a person in fact visited the property.

**{¶21}** The bank suggests that the letter may be sufficient to show a reasonable effort. The bank also responds that there was evidence provided to the court during the summary judgment stage that a field agent visited the property at least one time as required by § 203.604(d) and that it in fact shows that a field agent visited three times after the letter was sent and prior to foreclosure. The bank refers to the Homesaver-Workout Notes at discovery bate-stamp numbers 52-56.

**{¶22}** These documents were provided by the bank to appellant during discovery in response to his documents request to "produce the computer screen shots of each and every memorialized contact with Defendant regarding his mortgage" and to "produce each and every document in any way related to Plaintiff's attempt to arrange a face-to-face meeting with Defendant to discuss his default in mortgage payments prior to Plaintiff filing foreclosure." (Req. for Prod. of Docs. 2, 9); (Prod. of Docs. 2, 9, attaching a packet of bate-stamped documents and a notarized verification by an operations team manager that the answers to the interrogatories and request for production of documents were true).

**{¶23}** The note in number 56 states that there was a field visit on March 22, 2012 and no contact was made; the note in number 55 states that there was a field visit on April 1, 2012 and no contact was made; and the note in number 54 states that there was a field visit on April 20, 2012 and no contact was made. The note in number 52 lists these three visits made under the "Face to Face Campaign."

**{¶24}** As the bank points out, *appellant* attached this evidence to his memorandum in opposition to the bank's summary judgment motion. To recap, the bank's affidavit declared that the conditions precedent were satisfied and incorporated the face-to-face letter; the bank relied on that letter to show that a meeting was offered and that a representative would be dispatched to visit the property even if appellant did not respond; and appellant responded that this was not sufficient evidence that the visit was actually conducted, but then provided evidence indicating that visits were conducted (the very evidence said to be lacking).

**{¶25}** The trial court's summary judgment briefing schedule called for a reply brief to be filed by the movant. The bank's reply pointed to the evidence supplied by appellant's response that three visits were made to the property.

**{¶26}** Notably, appellant's brief on appeal makes no reference to the pertinent documents attached to his own response below; nor does the brief directly respond to the bank's position on this topic. By refusing to discuss the ability to consider or the effect of the evidence, he presents little analysis for our review. The position articulated on whether a visit occurred appears to consist only of the argument that *the bank* did not *attach* evidence that a visit was made. Appellant makes no legal argument that the bank's reply could not have provided the evidence. (In fact, his argument that the bank did not provide evidence of a visit in its motion *or* in its reply, suggests that he agrees that it could have been provided by the bank's reply.) Rather, appellant factually states that the reply did not provide the evidence. Yet, appellant does not then set forth an argument that parties cannot refer to each other's attached evidence and point out anything favorable therein.

**{¶27}** Notably, a party can waive any objection to evidence that does not comply with the requirements of Civ.R. 56(C). *State ex rel. Gilmour Realty, Inc. v. Mayfield Height*s, 122 Ohio St.3d 260, 910 N.E.2d 455, 2009-Ohio-2871, ¶ 17 (courts may consider evidence that does not comply with Civ.R. 56(C), such as unsworn and unauthenticated documents, if there is no objection). The bank did not object to those pieces of favorable evidence indicating visits to the property that were supplied to the court by appellant and instead specifically asked the court to utilize them.

**{¶28}** The attachment of evidence to one's own filing falls in a similar category of waiver. The non-movant's own evidence inadvertently waived or eliminated the argument that evidence to support a certain fact was lacking. Although a summary judgment burden may not shift to the non-movant until the movant's initial burden was met, where the non-movant responds in a manner that "saves" the movant by providing the very item said to be lacking, this cures that disputed aspect of the movant's motion, especially where a pre-ordained reply remained to be filed and which reply then pointed the court to the favorable evidence provided by the non-

movant. Hence, even assuming arguendo the letter advising that a representative would be dispatched would not have been enough to show reasonable efforts at a face-to-face meeting, the unobjected to summary judgment evidence showed that a property visit was made. This argument is overruled.

<u>TIMING OF EFFORTS TO ARRANGE FACE-TO-FACE MEETING</u>

**{¶29}** Appellant's next argument is that there was a genuine issue as to compliance with the timing requirements in § 203.604(b) when the letter offering the face-to-face meeting was sent prior to foreclosure but after the notice of intent to accelerate. He emphasizes that the cited efforts at a meeting occurred more than two years after the notice of intent to accelerate.

**{¶30}** Note that appellant's memorandum in opposition to summary judgment made no argument concerning this timing issue. He argued that a letter is not enough because a property visit is also required; however, he did not voice a complaint that the letter was sent after the date for acceleration. Appellant raises it now on the theory that it is a condition precedent and thus the bank had the burden at the summary judgment stage to show that reasonable efforts at a meeting were not only made but that they were made prior to acceleration. Consequently, if the timing issue is not a condition precedent but is merely an affirmative defense (or a non-prejudicial technicality), then that matter was not preserved in the summary judgment stage by appellant, the party with the burden as to his own affirmative defenses.

**{¶31}** Appellant reiterates the statements in the note and mortgage concerning HUD regulations. For instance: "In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulation of the Secretary." Mortgage at ¶ 9(d). *See also* Note at ¶ 6(B) ("In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations."). Again, the regulation states

in pertinent part: "The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, *before three full monthly installments due on the mortgage are unpaid.*" (Emphasis added.) 24 C.F.R. § 203.604(b).

**{¶32}** From this, appellant concludes that the face-to-face effort had to be made before the November 7, 2009 acceleration date contained in the October 8, 2009 notice of intent to accelerate. The bank responds that strict compliance with the timing requirement in § 203.604(b) is not required or foreclosure could be forever barred if the bank did not conduct or make an effort to conduct the meeting within three months of late payments. The bank states that the HUD servicing obligation is satisfied as long as the bank complies before initiating a foreclosure action. The bank relies upon this court's *Garland* case and additionally cites the Second District's *Mahaffey* case, which latter case observed:

> If a lender's failure either to have a face-to-face interview, or to make a reasonable effort to arrange the interview, within the first three months of default is deemed to preclude the lender from ever bringing a foreclosure action, the regulation would have too much force. A commonsense construction of the regulation is that it requires, subject to the exceptions * * *, that a lender either have a face-to-face interview or make a reasonable effort to arrange the interview before bringing a foreclosure action, and that the mortgagee is urged, by the regulation, to have the interview, or to make a reasonable effort to arrange the interview, within the three-month default period.

*Washington Bank v. Mahaffey*, 154 Ohio App.3d 44, 2003-Ohio-4422, 796 N.E.2d 39, ¶ 22 (after disposing of an argument that the obligation to arrange a face-to-face interview can be avoided simply by waiting three months before bringing a foreclosure action).

**{¶33}** In our *Garland* case, the note and mortgage had similar language to the note and mortgage at issue here regarding compliance with HUD regulations before acceleration. The debtor's answer stated that the bank failed to comply with HUD

regulations prior to acceleration. *Garland*, 7th Dist. No. 12MA222 at ¶ 34. We concluded that this did not sufficiently plead the lack of a face-to-face meeting, as said HUD servicing requirement was a condition precedent to foreclosure, which must be pled with particularity under Civ.R. 9(C). *Id.* at ¶ 35.

**{¶34}** In doing so, this court reviewed the overall HUD regulatory scheme and pointed out that 24 C.F.R. § 203.500 declares that it is the intent of the mortgage servicing section that the servicing regulations therein be followed *prior to foreclosure*. *Id.* at ¶ 26. Moreover, we emphasized that 24 C.F.R. § 203.606(a) states: "Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met. The mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid * * *." *Id.*

**{¶35}** In rebutting a theory that construing the regulation as requiring as a condition precedent would be unduly harsh on banks due to the deadlines in the regulations, we stated that the obligation to perform the conditions is mandatory but the specific time deadlines are "aspirational." *Id.* at ¶ 30.

> For example, if a bank commences a foreclosure action at the earliest possible time, the day after the third payment is missed, the bank's failure to have the face-to-face meeting within the first three months of default, would, absent one of the exceptions, bar the bank from filing the foreclosure action. On the other hand, if the bank waited until the borrower missed six payments, for example, the bank's failure to have the face-to-face meeting within the first three months of default, would not bar the foreclosure action, as long as the bank held the meeting sometime before filing the action; e.g. in the fourth or fifth month.

*Id. See also id.* at ¶ 27 (the regulations show the bank must comply with the servicing requirement of the face-to-face meeting before commencing foreclosure actions).

**{¶36}** In keeping with these statements, the regulation encourages the face-to-face meeting efforts to be made within the first three months. This corresponds to

the regulation prohibiting a foreclosure action from being filed until at least three months are unpaid. And, the servicing requirements are meant to bar *foreclosure* in the absence of such servicing. The mortgage speaks of compliance with HUD regulations prior to acceleration or foreclosure, and the note speaks of compliance with HUD regulations prior to acceleration. But, the cited HUD regulation has been said to be a condition precedent only to the foreclosure with its specific timing requirements being merely aspirational.

**{¶37}** Appellant's reply on appeal states that *Garland* is not applicable because the note here was accelerated long before the bank attempted to comply with the HUD regulation on the meeting. The debt in *Garland* was also alleged to have been accelerated prior to efforts at a meeting as it was alleged that no efforts occurred even before foreclosure. *See id.* at ¶ 12. That debtor waived the condition precedent of a face-to-face meeting by failing to specifically allege it in the answer as required by Civ.R. 9(C). Thus, there was not an evaluation of the specific claim made by appellant here: that a meeting prior to foreclosure is not good enough if the meeting did not occur prior to acceleration.

**{¶38}** Still, *Garland* broadly indicated that the action is not prohibited if the efforts at the meeting occurred after the first three months (the deadline in the HUD regulation) but before commencement of the foreclosure action. We essentially stated that the failure to offer a meeting prior to foreclosure is a condition precedent (which must be raised in the answer with specificity or is waived) but otherwise the timing of the meeting is not a condition precedent (as long as it occurred prior to filing the action).

**{¶39}** We conclude that the timing of the efforts at a face-to-face meeting did not preclude summary judgment as the efforts were made four months prior to commencement of this foreclosure action and thus the bank did not fail to show compliance with a condition precedent to the filing of the action. As appellant made no arguments on this issue at the summary judgment stage, further analysis is unnecessary.

CREDIT OF CERTAIN PAYMENTS

**{¶40}** Appellant raised as an affirmative defense that he was not credited for payments he made in June, July, and August of 2009, while the servicing of the loan was being transferred from Taylor, Bean & Whitaker to the current holder. The bank initially argued that Civ.R. 10(D) required the account or written instrument on which the defense is founded to be attached to the answer and stated that appellant failed to provide supporting documentation as requested in discovery. The bank pointed to its affidavit with the attached payment history showing the payments that were made and thus the ones that were not made.

**{¶41}** Appellant's memorandum in opposition to summary judgment advised the trial court that the prior servicer payment history shows the July 31, 2009 quick collect payment. He pointed out that the last entry in said history is August 3, 2009 and the bank's payment history begins on August 25, 2009. To show a genuine issue as to other payments not listed, rather than submit his own affidavit and documentation of the payments he claimed to have made, he relied solely on a September 29, 2009 call note from the comment history provided to him by the bank in discovery at bate-stamp 37. This call note states: "TAD: $5,723.67 * * * CLLD TO CHECK STATUS. SD SENT PYMT BY WESTERN UNION 7/31/2009 mtcn#246569881, [?]UG 26, 2000.00 mtcn 3601771478, SD REC LETTER, made another pymt 2000.00 conf#8857421 research issue was sent Taylor Bean Whitaker."[1]

**{¶42}** Appellant urged that this evidence created a genuine issue of material fact as to whether he was credited with all payments made during the period the loan was being transferred. He did not specifically express this, but it seems he was suggesting that he told the bank on September 29 that he made another payment after the one on July 31, 2009. On appeal, he now states that the call note establishes a genuine issue as to whether he made two payments after the July 31

---

[1]The [?] is used because the letter is not clear. Appellant presumes it is the letter a and that the word is an abbreviation for August. It is clearly not a capital A; it could be a lowercase a but its top is cut off (compared to other lower case a's in the document).

payment and prior to the call. Thus, he now asserts that the note refers to three payments.

**{¶43}** In replying below, the bank asserted that an affidavit was needed to incorporate and authenticate the attachment of the call note (although the bank supplied a notarized verification to appellant in discovery concerning the documents produced). The bank urged that appellant could not meet his burden to show a genuine issue that the payments were made without producing evidence. The bank further stated that appellant should have responded with an affidavit to support this claim rather than citing a document produced in discovery and consequently he was improperly resting upon the mere allegations in the pleadings without meeting his burden of specificity.

**{¶44}** The bank alternatively urged that appellant drew incorrect conclusions from the call note the bank provided in discovery. The bank pointed out that the payment history shows the $2,000 payment made via Western Union Quick Collect was collected on July 31, 2009 and applied to the payment due June 1, 2009. The bank also emphasized that the call note listed only one actual confirmation number (and two numbers called mtcn that appellant provided to the representative); the bank thus suggests that only a bank confirmation number would provide evidence that a payment was received. (Appellant apparently believes we should take judicial notice that mtcn is Western Union's label for a confirmation number.)

**{¶45}** The bank's business records properly incorporated as evidence by affidavit show that appellant did not make the payment due on June 1, 2009 until July 31, 2009; and, as of the September 29 phone call, the records show no payments credited to him for July, August, or September. The bank's initial summary judgment burden was met and is not in dispute on the topic of these missing payments. Appellant's argument here deals with whether *he* met his summary judgment burden.

**{¶46}** "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

issue for trial." Civ.R. 56(E). "If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." *Id.* Besides the reciprocal summary judgment burden of a non-movant to respond with specificity under Civ.R. 56(E), payment is an affirmative defense and the burden to produce summary judgment evidence raising a genuine issue as to this fact rests on appellant. *See Garland*, 7th Dist. No.12MA222 at ¶24 (borrower's burden to set forth affirmative defense via brief in opposition to summary judgment).

**{¶47}** Initially, we note that appellant attached his discovery responses to his memorandum in opposition to summary judgment along with 150 other pages. His brief points to two responses he made to the bank's requests for admissions. In those responses, he claimed that there was a failure to credit payments made while the servicing rights were being transferred and that he discussed with the bank prior payments made to Taylor, Bean & Whitaker for which he was not credited.

**{¶48}** However, similar to the analysis set forth in the next section, appellant did not direct the trial court to these quotes in his own admissions in arguing that there existed a genuine issue as to the crediting of payments. As explained infra, one cannot attach all documents received in discovery to a summary judgment filing and expect the trial court to scour them in case that party forgot to point out support for his position contained therein.

**{¶49}** The remaining issue is whether appellant's use of the call note in the bank's records summarizing what he told a representative during a call creates a genuine issue of material fact as to whether a payment was made. That is, does appellant's interpretation of a note, which contains what appellant told a person over the phone, meet his burden of showing genuine issue as to whether he made a payment after July 31, 2009 (the undisputed date of the quick collect payment) and before September 29, 2009 (the date of the call)?

**{¶50}** Even assuming arguendo that the documents themselves provided by the bank in discovery are proper summary judgment evidence of business records that can be submitted by the recipient due to the notarized verification provided by the bank that the answers to interrogatories and requests for production of

documents are true, appellant's interpretation of the call note is speculative. This observation is overshadowed by another dilemma concerning the contents of the note.

**{¶51}** Hearsay is not admissible except as provided by the rules or a statute not in conflict therewith. Evid.R. 802. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Exceptions to the hearsay prohibition exist, even when the declarant is available. *See* Evid.R. 803. Pertinently, Evid.R. 803 provides:

> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

> (7) Absence of entry in record kept in accordance with the provisions of paragraph (6). Evidence that a matter is not included in the memoranda, reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness.

**{¶52}** The bank used its business records of payment history to show the absence of an entry in the record of payments made by appellant for the pertinent time period. To meet his reciprocal and affirmative defense burden, appellant wished to use the bank call notes to show there was a payment, suggesting the notes qualify as business records.

**{¶53}** The note could be used by appellant to show that he in fact called the bank and made various claims, i.e. to show that it is true that he informed the bank of his claim (assuming appellant's interpretation is not an overly speculative interpretation). And, any statements of the bank as the party opponent could be used by appellant. *See* Evid.R. 801(D)(2) (A statement is not hearsay if it is offered against a party and is, for instance, the party's own statement, in either an individual or a representative capacity, or a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship).

**{¶54}** But, the contents of the call note summarizing his allegations cannot be used to assert that he in fact made a payment. *See, e.g., Mastran v. Urichich*, 37 Ohio St.3d 44, 48, 523 N.E.2d 509 (1988) (patient's statement to nurse on cause of accident not admissible by plaintiff as business record to prove patient was negligent). That appellant told a person over the phone that he made a payment and she wrote it down does not make it evidence to support the contents of the statement, i.e. just because a person wrote his statement down in the course of her business duty does make his statement admissible to prove the truth of the matter asserted.

**{¶55}** As the bank points out, this involves improper reliance on hearsay within a business record. The matter arises under the concept of "hearsay within hearsay," also known as "double hearsay" or "totem pole hearsay." Now, the business record exception eliminated the first layer of the hearsay rule here; however, no exception has been elucidated by appellant as to the next level of hearsay: that of what appellant told the declarant. *See* Evid.R. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the

combined statements conforms with an exception to the hearsay rule provided in these rules.").

**{¶56}** Notably, the item in the business record can only be admitted if the business record declarant could have testified had she been on the witness stand. *See* Staff Note to Evid.R. 803(6). Placing the bank representative on a witness stand and asking her, "Did my client tell you he paid?," would not be permissible evidence to prove that he in fact paid. As aforementioned, a party's statement to another is admissible if offered by the other party, but one cannot introduce *their own statement* through the other party's agent. *See* Evid.R. 801(D)(2) (the statement is offered against a party and is his own statement or that of his agent). There may also be concerns about the trustworthiness of certain statements by a mortgage debtor to a bank representative on the phone. *See* Evid.R. 803(6) ("unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness").

**{¶57}** This concept applies to the summary judgment stage as well so that the particular evidence pointed to in support must be that which is admissible. *See, e.g.*, *Burkhart v. H.J. Heinz Co.*, __ Ohio St.3d ___, 2014-Ohio-3766, ¶ 35-38 (former testimony under oath did not satisfy hearsay exception and thus was inadmissible summary judgment evidence); *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 23 ("court need not consider hearsay in resolving summary judgment motions"); *Pearl v. City of Wyoming*, 1st Dist. No. C-120563, 2013-Ohio-2723, ¶13 (hearsay testimony in deposition cannot be considered at summary judgment stage where, absent an exception, hearsay may not be considered); *Wesley v. Walraven*, 4th Dist. No. 12CA18, 2013-Ohio-473, ¶ 34 (statements of various witnesses within police report cannot be utilized for summary judgment); *Wallace v. Hipp*, 6th Dist. No. L-11-1052, 2012-Ohio-623, ¶ 33-34 (driver's statement estimating her speed to officer which was recorded in police report was inadmissible hearsay and could not be considered for summary judgment purposes even when report falls under public record hearsay exception and was authenticated); *Stevenson v. Prettyman*, 193 Ohio App.3d 234, 2011-Ohio-718, 951

N.E.2d 794, ¶¶ 27–28 (8th Dist.); *Estate of Doudican v. Dieckman*, 2d Dist. No. 21011, 2005-Ohio-6393, ¶ 21-23; *Laughner v. Laughner*, 8th Dist. No. 56491 (Jan. 25, 1990) (hearsay portions of police report and medical record cannot create genuine issue for summary judgment purposes). *See also* Civ.R. 56(E) (summary judgment affidavit shall set forth evidence as shall be admissible in evidence). *Otherwise, a debtor would not need to provide evidence of payment to avoid summary judgment as long as he once told a call representative that he made a certain payment.*

**{¶58}** In any event and applying another, simpler rationale, the statement appellant attempts to use in order to avoid summary judgment is merely that he told someone that he made two unrecorded payments. For summary judgment, we assume that is true and do not weigh evidence or make credibility determinations. We thus assume that it is true that he told the bank he made two payments between the July 31 payment and the September 29 phone call. Yet, the issue is not whether he *told* the bank he made the payments but whether he in fact *made* the payments.

**{¶59}** Appellant's reply on appeal characterizes the bank's position as improperly placing a trial burden on him to actually prove his defense by a preponderance of the evidence rather than merely placing a burden on him to demonstrate a genuine issue of material fact. However, this is not the case. He had the burden to show that he was not credited with all payments made. Proving only that he told someone he did something does not meet that burden. That is, he is proving the wrong point as the call note does not provide that a payment was made, but provides only that appellant told the person taking the call that a payment was made. In accordance, appellant failed to meet his burden of demonstrating a genuine issue of material fact as to his affirmative defense of payment.

REINSTATEMENT

{¶60} Next, appellant urges that there exists a genuine issue of material fact as to whether he was denied the right to reinstate the loan. The mortgage provides at ¶ 10:

> "Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including to the extent they are obligation of the Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument."

{¶61} Appellant urges that he met his summary judgment burden on this affirmative defense. At the summary judgment stage, appellant pointed to the $5,650.47 amount in the October 8, 2009 notice of intent to accelerate which was due by November 7, 2009. He then referred the court to an account information statement attached to the bank's affidavit stating that foreclosure fees in January of 2010 were $1,025. Finally, appellant relied upon the bank's discovery response at number 36, which indicated that he contacted the bank on January 20, 2010 and stated that he would make a quick collect payment of $2,106.65 in a few days followed by a $6,000 payment the next week. Then, a January 25, 2010 call note

stated the appellant was advised of foreclosure status and that he "wanted to make a payment for $6,000   advised that due to loan in foreclosure he is not able * * *."

**{¶62}** Appellant concluded that these payments would have been sufficient to allow him to reinstate the loan including foreclosure fees.  He did not do the math for the court but apparently wished the court to add $5,650.47 and $1,025 for a total of $6,675.47 and conclude that $8,106.65 (the total of the two predicted payments) would cover the amount due for purposes of reinstatement.

**{¶63}** The bank first replied that appellant should have responded with an affidavit to support his claim that he attempted to reinstate (and that an affidavit was needed to incorporate the bank's document produced in discovery, although he did include the bank's affidavit which accompanied the production of documents).  The bank alternatively urged that appellant drew incorrect conclusions from the material provided by the bank in discovery.

**{¶64}** The bank also argued that appellant failed to show that the amount allegedly offered would have been sufficient to reinstate the loan.  It was pointed out that between the November 7, 2009 date (provided for in the October 8, 2009 notice of acceleration as the day by which $5,560.47 could be paid) and the January 25, 2010 contact with the bank, *additional payments would have been missed* and fees added.

**{¶65}** In response to the bank's argument that he failed to show that the amount allegedly offered would have been enough to reinstate, appellant now points to an answer he gave in a request for an admission.  That is, when asked to admit that he was delinquent, he answered that any failure to pay was the result of the bank failing to credit him for payments made while the servicing rights were being transferred.  He added, "Defendant made arrangements to pay the entire alleged deficiency (and to argue about the proper crediting at a later time), when plaintiff failed to accept the payment of the alleged deficiency."  (Request for Admission No. 18.)

**{¶66}** Appellant concludes that his own admission that he "made arrangements to pay the entire alleged deficiency" was sufficient to raise a genuine

issue as to whether the money he offered would have been enough to reinstate. Appellant believes the trial court improperly weighed credibility by not accepting this sworn admission.

**{¶67}** Civ.R. 56(E) requires specificity in meeting the reciprocal burden, and appellant's statement is fairly general, containing no statement as to the amount due at the time he attempted to meet his obligation under the reinstatement clause. In any case, appellant did not make reference to this statement in his arguments to the trial court below.

**{¶68}** Appellant only argued to the trial court that the notice of default, the bank's record of fees, and the bank's notes from January 20 and 25 were sufficient to establish a genuine issue as to whether the bank breached its obligation to allow him to reinstate. He seemingly attached all of the documents exchanged in discovery to his memorandum in opposition to summary judgment. Over 150 pages were attached to a three-page memorandum.

**{¶69}** This "attachment of everything" strategy did not require the trial court to scour the attachments to find any potential statements which may help meet a burden.[2] As appellant did not point the trial court to his admission to support his reinstatement argument, he cannot now support his burden by citing to items not cited to the trial court.

**{¶70}** We turn to the call notes that he did cite to the trial court. Appellant is said to have predicted, on January 20, 2010, that he would be sending two payments: one in a couple days for $2,106.65 and one the next week for $6,000. Appellant then called the bank on January 25, 2010 and may have been advised that he could not make a $6,000 payment because the loan was in foreclosure.

**{¶71}** Appellant's January 20, 2010 statement that he would pay $2,106 on Friday and $6,000 the next week is not proper evidence. Assuming arguendo the document was properly authenticated by the bank employee's discovery verification

---

[2]In fact, this strategy can backfire as can be seen by the analysis supra, where appellant's attachment of everything benefitted the bank as to the property visit issue after the bank's reply then specifically pointed out the attached evidence of property visits to the trial court.

(and thus properly attached for use as a business record), appellant's own statements within that record were hearsay. *See* analysis supra. In addition, the statement does not establish any fact but is merely the voicing of two predictions by a debtor.

**{¶72}** Appellant points out that the portion of the January 25 note containing the bank's own statement would not be hearsay. *See* Evid.R. 801(D)(2). The bank urges that a one-sentence statement by one call representation (even if true and even if it had the meaning attributed to it by appellant) should not be sufficient to raise a genuine issue as to whether the bank breached the reinstatement clause, suggesting that appellant should have called the legal department or talked to a supervisor. The bank also points to the speculative nature of appellant's interpretation of the short call note. For instance, the note does not state that he cannot reinstate, but refers to one call representative's response to appellant's desire to make a $6,000 payment.

**{¶73}** On this point, appellant has not shown a lump sum tender or the tender of all amounts due. That is, to meet his burden on his affirmative defense of refused reinstatement, he had to provide evidence that he did "tender in a lump sum all amounts required to bring Borrower's account current" as required by the reinstatement clause. The call note from January 25 (the day on which he was allegedly denied his right to reinstate) merely states that he wished to pay $6,000. Nowhere does appellant allege that $6,000 would have been sufficient to reinstate. The reinstatement clause requires a lump sum payment of the entire overdue amount. And, there was no evidence that he had already paid the $2,106 amount or any other amount in January.

**{¶74}** Finally, appellant did not discuss the bank's observation that new payments would have been due in December and January. The loan documents show that a payment of $1,426.98 for principal and interest was due on the first of each month (in order to avoid a 4% late charge after the fifteen days). And, that does not include the escrow items, such as house insurance and property tax, which were nearly $485 per month. Appellant has not shown that his attempt to pay was

compliant with the reinstatement clause. For all of these reasons, we conclude that appellant did not meet his summary judgment burden on his affirmative defense involving reinstatement.

{¶75} For the foregoing reasons, the judgment of the trial court is hereby affirmed.


Waite, J., concurs.
DeGenaro, P.J., concurs.