[Cite as *Pearl v. Wyoming*, 2013-Ohio-2723.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MICHAEL PEARL, | : | APPEAL NO. C-120563 |
| | | TRIAL NO. A-1007237 |
| MONICA MILLER, | : | |
| | | *O P I N I O N.* |
| and | : | |
| CATHY DETERS, | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| CITY OF WYOMING, | : | |
| Defendant, | : | |
| and | : | |
| ROBERT HARRISON, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  June 28, 2013

*Freking & Betz, LLC*, *Randolph H. Freking* and *Brian Gillam*, for Plaintiffs-Appellees.

*Subashi & Wildermuth*, *Nicholas E. Subashi* and *Tabitha Justice*, and *Strauss & Troy* and *Franklin A. Klaine*, for Defendant-Appellant,

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1}   In one assignment of error, defendant-appellant Robert Harrison argues that the trial court improperly denied his request for immunity for the claims made by plaintiffs-appellees Michael Pearl, Monica Miller, and Cathy Deters in the litigation they filed relating to their employment with defendant City of Wyoming. Having thoroughly reviewed the record, we agree.

### Drinking at City Event Leads to Termination

{¶2}   Pearl, Miller, and Deters were all employed by the City of Wyoming on August 28, 2009. On that date, the city held a "Teen Splash Dance" for middle-school children. Pearl, Miller, and Deters were at the event. Pearl was in charge of the event, Miller worked at the front desk collecting tickets and money, and Deters was the aquatic director, interacting with staff and patrons. The three consumed alcohol while at the front desk during the event.

{¶3}   A few days later, the incident was reported to Missy O'Brien, the recreation director. O'Brien relayed this information to the assistant city manager, who then told Robert Harrison, the Wyoming city manager. In order to conduct an investigation, the city hired a Springfield Township police officer to ask questions of the employees using voice-stress analysis. It was thought that such testing would mitigate the "he-said-she-said" nature of the claims, and would provide outside assistance in the difficult situation. All three employees came in for interviews and to take the voice-stress tests. All three admitted to consuming alcohol at the party. Another employee who was also drinking at the event was questioned, but chose to resign immediately. She is not a part of this litigation.

{¶4} The three employees were told to report to work the following Tuesday. Pearl and Miller reported, Deters sent in a note stating that she was ill. Harrison told Pearl and Miller individually that they had the option of resigning or the city would terminate them. Harrison informed Deters by mail of the same choice. Pearl and Miller chose to resign, Deters was fired.

{¶5} Pearl, Miller, and Deters then filed suit claiming that their terminations were the result of unlawful discrimination. Miller and Deters claimed that they were terminated because they are female, Pearl claimed that he was terminated because he is a disabled African-American. The three filed suit against the City of Wyoming, as well as against Harrison, both individually and in his official capacity. After discovery, Harrison filed a motion for summary judgment claiming that he was entitled to immunity under R.C. 2744.03. The trial court denied his motion for summary judgment.

### The Denial of Summary Judgment was Improper

{¶6} We review the grant or denial of summary judgment de novo, applying the standards set forth in Civ.R. 56. *See Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). To obtain summary judgment, the movant must demonstrate that (1) there is no genuine issue of material fact; (2) the movant is entitled to judgment as a matter of law; (3) and it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmovant, and that conclusion is adverse to the nonmovant. *Id.*

{¶7} Under R.C. 2744.03(A)(6), an employee of a political subdivision is entitled to immunity from liability for conduct in connection with a governmental or proprietary function unless he was acting outside the scope of his employment, his conduct was "malicious, in bad faith, or wanton or reckless," or a specific statute

3

imposes liability. In this case, the parties agree that the only exception at issue is whether Harrison's conduct falls within the class of malicious, bad faith, wanton, or reckless behavior.

### Maliciousness, Bad Faith, Wanton or Reckless Behavior Defined

{¶8} "Maliciousness" has been defined to mean "indulging or exercising malice; harboring ill-will or enmity." *Teramano v. Teramano*, 6 Ohio St.2d 117, 118, 216 N.E.2d 375 (1966). Furthermore, "malice" can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. *See Bush v. Kelley's, Inc.*, 18 Ohio St.2d 89, 247 N.E.2d 745 (1969); *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 453, 602 N.E.2d 363 (12th Dist.1991).

{¶9} "Bad faith" embraces more than bad judgment or negligence. It indicates a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another. *See Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45, (1962), paragraph two of the syllabus.

{¶10} "Wanton" misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. *Anderson v. City of Massillon* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266 ¶ 25, quoting *Universal Concrete Pipe Co. v. Bassett*, 130 Ohio St. 567, 200 N.E. 843 (1936), paragraph two of the syllabus.

**{¶11}** Finally, a person acts in a "reckless" manner if he does an act or intentionally fails to do an act which it is his duty to do. The person must know or have reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705 (1990).

### Harrison's Conduct Does Not Reach Actionable Level

**{¶12}** The former employees first argue that "Harrison's decision to terminate Appellees, when he did not similarly terminate employees outside of Appellees' protected classes * * * demonstrated his malicious intent to discriminate against appellees." But we find no such evidence.

**{¶13}** We note that, throughout their depositions, Pearl, Miller, and Deters gave numerous examples of employees who were alleged to have consumed alcohol in various workplace contexts—at the city bowling alley, at city ceremonies, at softball games, and other events. But, for the vast majority of them, there was no direct evidence that the incidents occurred. When asked how they knew about the various incidents, they could only respond that they had heard about them "in the community" and from other individuals, most of whom they could not name. Civ.R. 56(C) lists the types of evidentiary materials that a court may consider in rendering summary judgment; these include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action." Absent an exception, hearsay may not be considered in a motion for summary judgment. *Johnson v. Southview Hosp.*, 2d Dist. No,. 25049, 2012-Ohio-4974, ¶ 20, citing *Knoth v. Prime Time Mking. Mgmt.,*

*Inc.*, 2d Dist. No. 20021, 2004-Ohio-2426, ¶ 13. Therefore, we will not consider this testimony as it is not competent.

{¶14}  But even if there was competent evidence that the incidents occurred, there was no evidence that Harrison or the city was informed of them. Without a showing that Harrison or the city knew about these incidents and failed to act, they cannot serve as proof of Harrison's "malicious purpose."

{¶15}  In their brief, Pearl, Miller, and Deters list three incidents in which individuals whom they claim to be similarly situated were treated differently. The first involved a public works employee who had tested positive for marijuana use in 2006. The second was a 2009 incident where a city employee was seen drinking at an event at the pool. The third was an incident in 2010 in which day camp counselors were found drinking at an end-of-the-season softball game.

> {¶16}  The Sixth Circuit has held that
>
> to be deemed 'similarly situated' in the disciplinary context, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998). None of the examples cited by Pearl, Miller, and Deters meet this test.

{¶17}  The first incident involved a public works employee who, because he held a commercial driver's license, was required to submit to random drug testing. After one such test in 2006—three years before the events in this case—he tested positive for the presence of tetrahydrocannabinol (THC), a chemical left in the body

6

after marijuana use. The employee was questioned, and he admitted marijuana use at a party the previous weekend. There was no allegation that he had used marijuana at work. There was no allegation that he was under the influence of marijuana at work. And the employee was subjected to discipline consistent with the city's controlled-substances and alcohol-use policy.

{¶18} The second incident involved another public works employee who attended a private pool party and had consumed beer. But there was no evidence that the employee was working or was in any way engaged in an area or acting in a way in which it could be said that he was acting as an employee. Absent any evidence that the employee was working or acting in some official capacity, the situation is not comparable.

{¶19} The final incident involved seasonal day camp counselors. At the end of the summer of 2010, the camp counselors had an end-of-season softball game. During the game, some of the counselors were sneaking out to their cars and drinking beer. When this was discovered, the event was ended and the counselors' parents were called. But there was no showing that these individuals were members of the same class as Pearl, Miller, and Deters. In fact, the only testimony on the point was that the city did have African-American camp counselors. Also, these were seasonal workers who were not working at the time of the event. Additionally, at least one witness testified that none of those who participated in the conduct returned to work the next season.

{¶20} Having considered the entire record, we conclude that there was no evidence presented that indicated that Harrison acted with a malicious purpose. This leaves only the question of whether Harrison acted in bad faith, or in a wanton or reckless manner.

{¶21}   As with the question of malicious purpose, we conclude that there is no competent evidence that Harrison acted in bad faith, as that term is defined under Ohio law.   In addition to the above conduct, Pearl and Miller had claimed that Harrison had promised them that he would not disclose the circumstances of their termination to prospective employers if they chose to quit rather than be fired.   They claim that he violated this promise, which would implicate the dishonesty portion of the bad faith definition.   We disagree.

{¶22}   While media coverage of the incident was informed by records of the incident from their personnel files, which were obtained through public records requests, there was no evidence that Harrison breached the agreement.   Both Pearl and Miller testified about seeking employment, and neither could demonstrate that any prospective employer knew about the incident.   In fact, it was Pearl and Miller who disclosed the incidents to them.   Therefore, the former employees have made no showing of bad faith on the part of Harrison.

{¶23}   Finally, we consider whether Harrison acted in a wanton or reckless manner.   During the investigation, multiple parties were involved. Several city officials were present when the three were interviewed.   Harrison hired an outside consultant to provide a voice-stress analysis to ensure that the employees were not disciplined based solely on hearsay.   Prior to his decision regarding the three, Harrison consulted with Wyoming city council members and Wyoming's general counsel.  The morning on which the termination decision was made, he discussed the issue with the heads of all of the city's departments, without telling them who was involved.   All the department heads indicated that, if these employees worked in their departments, they would terminate them.   Considering these factors, we

conclude that Harrison's conduct during this episode did not rise to the level of wanton or reckless.

### Conclusion

{¶24}   In order to establish that Harrison was not entitled to immunity, Pearl, Miller, and Deters had to show that he acted in a way that was malicious, in bad faith, or wanton or reckless.  They have failed to do so.  Therefore, Harrison was entitled to immunity, and the trial court erred when it failed to so find.  The trial court's decision is reversed, and this cause is remanded to the trial court with instructions to grant Harrison's motion for summary judgment.

Judgment reversed and cause remanded.

**HENDON, P.J.**, and **DEWINE, J.**, concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.